HERMENEGILDO c/p ENRIQUE ALICEA, demandante y recurrente, *v.* LA SUCN. DE FRANCISCO GIL RIVERA, ETC., demandados y recurridos.

*Número:* 368 *Resuelto:* 19 de marzo de 1963

*Arístides Blanco Colón,* abogado del recurrente; *Víctor M. Pons,* abogado de los recurridos.

Sala integrada por el Juez Asociado Señor Pérez Pimentel como Presidente de Sala y los Jueces Asociados Señores Rigau y Dávila.

EL JUEZ ASOCIADO SEÑOR DÁVILA emitió la opinión del Tribunal.

---

(¹³) *Teoría de la Aplicación e Investigación del Derecho,* 1947, pág. 241.

El demandante es un jornalero que trabajaba como peón de don Francisco Gil, causante de los demandados. Reclama que es su hijo. Alega que su madre, cuando ambos eran solteros, vivió en concubinato con Gil. Además, que gozó de la posesión de estado pues siempre fue tratado como hijo, prodigándole afecto y ayudándolo económicamente. A la fecha en que se inició el pleito tenía 51 años. La prueba fue contradictoria. La del demandante tratando de establecer lo alegado. La de los demandados negándolo. El conflicto fue resuelto en contra del actor.

■ Sostiene el recurrente que el juez de instancia incidió al no darle crédito a sus testigos que no fueron contradichos. La teoría del demandante es al efecto de que habiendo sus testigos declarado que veían al causante de los demandados visitar por las noches la casa de la madre del demandante y estando los demandados imposibilitados de presentar testigos que hubieran estado durante todas las horas de la noche todos los días con éste para así poder afirmar que no visitaba la casa, el juez irremisiblemente tenía que darle crédito a los testigos que afirmaron verlo, pues su versión no es físicamente imposible o inverosímil. Lo mismo lo aplica a los actos de reconocimiento. Invoca a *Villaronga, Com.* v. *Tribl. de Distrito*, 74 D.P.R. 331 (1953), donde expresamos:

"En diversas ocasiones hemos reiterado la doctrina de que la declaración de un testigo no contradicho, sobre un hecho determinado, debe merecer crédito, a no ser que su versión sea físicamente imposible, inverosímil o que por sus contradicciones o su conducta en la silla testifical, se haga indigno de crédito."

■ Vemos que en la exposición de la regla se enuncia su cualificación. A menos que por "sus contradicciones o su conducta en la silla testifical se haga indigno de crédito". Y en *Biaggi* v. *Sucn. Esbrí*, 71 D.P.R. 450 (1950), expresamos que "[l]a regla es al efecto de que las cortes no pueden dejar de creer a un testigo cuya declaración no ha sido contradicha, a menos que exista un motivo razonable para no creerla".

■ Hemos leído la prueba. Hemos examinado la evidencia documental. Ciertamente el juez que oyó y vió declarar a los testigos estaba en mejor posición para aquilatar su testimonio. Pero aun sin verlos ni oirlos, la determinación final del juez sentenciador no dándole crédito parece ser la más sensata. Se aplica aquí lo expresado en *Biaggi:* "En el presente caso, la corte sentenciadora tenía motivos para dudar de la veracidad de los testigos, y siendo ello así, en el supuesto de que no se hubiera presentado evidencia para contradecirlos, el propio testimonio de ellos ponía en duda su veracidad".

Pasamos a apuntar pasajes en los testimonios presentados por los testigos presentados por el demandante que justifican la determinación del juez de instancia de no darle crédito.

En primer lugar abordaremos la declaración de Francisca Alicea, madre del demandante. Afirma en su testimonio que la persona que se alega es el padre estuvo presente en ocasión en que ella diera a luz a su hijo. Existe prueba documental al efecto de que para la época en que nació el demandante, el alegado padre estaba fuera de Puerto Rico. A esta testigo el abogado del demandado le preguntó que si ella tenía un hijo nombrado Francisco nacido en el año 1911. Lo negó afirmando que no tenía hijo de ese nombre. Se presentó el acta de nacimiento de un hijo de la testigo llamado Francisco Alicea, nacido en el año 1911. Afirma la testigo que el alegado padre vivió con ella desde el año 1904 hasta que se casó con la madre de los demandados en 1910. A pesar de vivir con ella no fue hasta pasados 40 días que él se enteró que ella había inscrito el niño con el nombre de Hermenegildo y fue entonces que él le dijo que lo llamaran Enrique.

Pasemos ahora a considerar el testimonio de Domingo Pérez. Este testigo declara que en el año 1940, cuando el demandante tenía 33 años de edad, en su presencia el ale-

gado padre, cuando vio que el demandante iba para el pueblo de Aibonito lo llamó y le dijo "Oiga Enrique, venga para acá. Compre una muda de ropa y compre unos zapatos y no me entre así al pueblo" y le dió $15 para que se comprara una muda de ropa y unos zapatos. Que entonces el testigo le pregunta "Don Paco, ese es peón de la finca o qué es?" y le contestó "No, ése es hijo mío, es hijo de una querida mía"! Este testimonio es poco menos que increíble, si tenemos en cuenta que ese mismo testigo ha declarado que vivía en Aibonito desde el 1922, que era vecino de la finca del causante de los demandados y que no conocía a Enrique Alicea durante ese tiempo ni se imaginaba que fuera hijo de don Paco. Y después de ese incidente de 1940 no vio nada más que le indicara que el demandante fuera hijo de don Paco. A la pregunta "Y desde el 40 para acá tampoco ha visto más nada de relaciones entre él y Francisco Gil?" contesta "No se nada más".

El testigo Rosendo Ortiz Ortiz manifiesta que tiene ochenta y tres años, que conoció a don Paco Gil desde principios del siglo que en una ocasión cuando regresaba de cazar vio a don Paco "que estaba con un muchachito en los brazos". No lo ve más hasta el año 1936, cuando el demandante tenía casi 30 años, que pasa por la finca de Don Paco y tienen el siguiente cambio de palabras: "Mira, Rosendo, ése es el muchachito que tú viste el día que tú estabas cazando, ya está hecho un hombre". "Pero es el nene aquél" contesta el testigo y responde "Sí, ése es mi hijo".

Ramón Rivera Rodríguez otro testigo declara que don Paco le mandaba el diario con él a la madre del demandante. ¿Si como afirma la madre él iba todas las noches, por qué tenía que mandarle el diario con otra persona? Y este testigo se refiere a la época en que don Paco no se había casado, a los años 1907 y 1908.

Nicolás Mateo Vitalis, es un compañero de trabajo, declara que el demandante le pedía la bendición a don Paco y que don Paco se refería a él como su hijo y que en una oca-

sión le autorizó a sacar carbón sin exigirle participación, pero que tampoco a él le exigió.

Marcial Rivera Cotto, repite lo de la bendición aun en presencia de los hijos de matrimonio de don Paco. Éstos al declarar lo contradicen. Manifiesta que don Paco le daba órdenes de ropa para un comerciante. El comerciante había muerto a la fecha del juicio.

María Alicea, tía del demandante hace referencia a las ocasiones en que don Paco le echaba la bendición al demandante y a otros hechos que tienden a establecer las alegaciones, pero si por la forma de declarar y comportarse el juez entiende que no le debía dar crédito al aquilatar toda la prueba en conjunto, no es arbitrario no darle crédito a su versión.

La declaración del demandante, relata las veces en que don Paco efectuó actos de reconocimiento para con él, ayudándolo económicamente, haciendo saber a las demás personas que él era su padre.

Al considerar la determinación del juez sentenciador de rehusar darle crédito a la prueba del demandante, que como hemos visto estuvo justificado en hacerlo por las circunstancias que quedan apuntadas, debemos tener presente además que los demandados presentaron prueba para controvertir la del demandante. Se presentó prueba al efecto de que Gil era una persona seca y que no acostumbraba hacer expresiones de cariño, o hacer ostentación en público de las relaciones con sus hijos. Hay prueba en el sentido de que los hijos de Gil conocían al demandante como obrero de su padre, y que éste nunca les hizo reconocimiento alguno de que fuera su hijo. Una hermana del causante afirma que para la época en que se alega que éste vivía con la madre del demandante, él dormía todas las noches en su casa. Corrobora esta declaración el testigo Cristóbal Moscoso, farmacéutico que conocía íntimamente a Gil, y quien afirma que éste antes de casarse en el 1910 vivía en su propio hogar

con su madre y sus hermanos. Este testigo habla de que él conocía de un hijo que había tenido Gil antes de casarse, pero que el demandante fuera hijo, nunca lo había oído. Si hubiera sido, o se hubiera comentado, él lo hubiera sabido. La evidencia de que Gil vivía con su madre y sus hermanos durante la época que se alega vivía con la madre del demandante está ampliamente corroborada por testigos que lo conocían íntimamente.

De una lectura desapasionada de toda la prueba, es razonable concluir que el juez de instancia estuvo justificado en no darle crédito a la del demandante.

*Se confirmará la sentencia recurrida.*