NATY IBÁÑEZ BENÍTEZ, querellante y recurrida, *v.* MOLINOS DE PUERTO RICO, INC., querellada y recurrente.

*Número:* O-82-378          *Resuelto:* 16 de marzo de 1983

*Francisco M. Ramírez Rivera*, de *Lespier, Muñoz Noya & Ramírez*, abogado de la recurrente; *Federico Rodríguez Pagán*, abogado de la recurrida.

EL JUEZ ASOCIADO SEÑOR NEGRÓN GARCÍA emitió la opinión del Tribunal.

I

El 1ro de julio de 1975, la Sra. Naty Ibáñez Benítez, de 60 años de edad, fue contratada por Molinos de Puerto Rico para trabajar como secretaria del Gerente del Departamento de Ventas, Sr. Frank Mathias. A los dos meses, coincidente con la celebración del Día del Trabajo, le fue concedido un aumento de sueldo. En adelante se consideró esa fecha como su "aniversario" en el empleo.

La señora Ibáñez llegó a desarrollar una muy cordial relación de trabajo con el señor Mathias, quien en todo momento se mostró complacido con su labor. De este modo transcurrieron dos años. En cada uno se le concedieron aumentos sustanciales de salario en la fecha de su "aniversario".

Sin embargo, al llegar el mes de septiembre de 1978, no se le concedió un aumento por la cantidad que ella esperaba. Se proyectó uno menor. Para esa fecha ella se encontraba en los preparativos de un viaje a la Argentina durante sus vacaciones. Por tal razón entrenaba a una joven empleada de "Manpower", como de 20 años de edad, para que la sustituyera temporeramente.

En vista de que la ausencia del aumento esperado entorpecía en algún grado sus planes, el 22 de septiembre abordó el tema al señor Mathias. Éste le explicó que ese año no se habían concedido aumentos mayores. La señora Ibáñez replicó que ello no era cierto, por cuanto había visto en el documento de presupuesto (*Salary Investment Plan*) que otros empleados habían sido favorecidos con aumentos como el que ella había previsto. El documento en cuestión era altamente confidencial, pero no estaba fuera del alcance de la señora Ibáñez ni de otros empleados que, como parte de sus funciones, participaban en su redacción, transcribiendo ciertos datos a maquinilla. Ante la refutación de la señora

Ibáñez, y posiblemente para evitar una discusión, el señor Mathias le suplicó que dejaran el tema, a lo cual ella accedió. La conversación se llevó a cabo en un tono amigable y ninguno de los dos exteriorizó ni dio señas de que el incidente hubiera afectado sus relaciones en el corto período transcurrido antes de comenzar sus vacaciones.

Pocos días después, la señora Ibáñez se marchó para Argentina a disfrutar de sus vacaciones. Durante su estancia en ese país le hicieron una oferta de empleo que rehusó, en vista de que gozaba de una mejor y más lucrativa posición en Puerto Rico.

Al regresar se reintegró a Molinos el 30 de octubre de 1978. Ese mismo día, a media mañana, el señor Mathias la llamó a su oficina. Le informó que había decidido prescindir de sus servicios, que le había ofrecido su puesto a la joven de "Manpower" y le entregó un sobre que contenía un cheque por una cantidad equivalente a tres meses de sueldo. Como razón para su despido le indicó que ella había sido desleal a la empresa al utilizar información confidencial para provecho propio. Le explicó, además, que no se lo informó antes porque tal decisión la había adoptado días después de su salida.

El señor Mathias ya había notificado de su decisión al jefe de personal de la empresa el 27 de octubre de 1978, o sea tres días antes de comunicarlo a la señora Ibáñez. Antes no había dado indicios de su decisión. Posteriormente, y luego de permanecer 2 semanas en la posición ocupada por la señora Ibáñez, la empleada de "Manpower" fue reemplazada por otra secretaria de alrededor de 28 años de edad. Ésta permaneció en el puesto algún tiempo. Finalmente, también fue reemplazada por otra empleada de 57 años de edad. A la fecha del despido, 12 secretarias ejecutivas trabajaban en Molinos. Cinco de éstas tenían más de 40 años de edad.

A raíz de estos hechos, la señora Ibáñez radicó una demanda contra Molinos de Puerto Rico, Inc., alegando que

su despido fue discriminatorio por razón de su edad, bajo la Ley Núm. 100 de junio de 1959, según enmendada, 29 L.P.R.A. sec. 146 *et seq.*, y bajo el *Age Discrimination in Employment Act of 1967* (ADEA), según enmendado, 29 U.S.C. sec. 621 *et seq.* Molinos contestó aduciendo que la cesantía estaba justificada a base del incidente mencionado. El tribunal de instancia no aceptó esa explicación y declaró con lugar la demanda. A solicitud de Molinos, revisamos.

## II

La tesis central del alegato de Molinos es que el tribunal de instancia erró al apreciar la prueba, por cuanto la misma no sostiene las conclusiones de hecho y de derecho formuladas por dicho foro. El análisis apelativo refleja que le asiste la razón. No procedía equiparar la acción bajo el ADEA con lo dispuesto bajo nuestra Ley Núm. 100. Ese enfoque incorrecto ocasionó que se evaluara y diera un alcance errado a la prueba.

Para entender la naturaleza del error, examinamos separadamente las dos leyes y sus distintos efectos.

A. *La causa de acción bajo el ADEA*

El ADEA concede una causa de acción a toda persona, entre los 40 y 70 años de edad, que hubiere sido despedida o rechazada de un empleo por razón de su edad. Su ejercicio está minuciosamente regulado por el estatuto federal, el cual, entre otras cosas, concede jurisdicción concurrente a los tribunales estatales para dirimir una controversia a su amparo. 29 U.S.C. secs. 626(c), 216(b); *Jacobi* v. *High Point Label, Inc.*, 442 F.Supp. 518 (1977). En el caso de Puerto Rico, no se requiere que se agoten todos los remedios estatales antes de acudir al que dispone esta ley. Véanse: *Vazquez* v. *Eastern Air Lines, Inc.*, 405 F.Supp. 1353 (1975); *Lugo Garces* v. *Sagner Inter., Inc.*, 534 F.2d 987 (1st Cir. 1976); y D. Engle, *Age Discrimination in Employment Act—Resort to State Remedies as a Prerequisite to Federal Action*, 44 Mo. L. Rev. 319 (1979).

██ En cuanto al aspecto procesal, las controversias bajo esta ley han sido equiparadas con otras surgidas bajo el Título VII del *Civil Rights Act of 1964*, 78 Stat. 253 (42 U.S.C. sec. 2000e *et seq.*). Como corolario, se ha decidido que los requisitos establecidos en *McDonnell Douglas Corp.* v. *Green*, 411 U.S. 792 (1973), para establecer un caso prima facie de discrimen racial son aplicables también a controversias bajo el ADEA. *Loeb* v. *Textron, Inc.*, 600 F.2d 1003 (1st Cir. 1979); *Hedrick* v. *Hercules, Inc.*, 658 F.2d 1088 (5th Cir. 1981); *Douglas* v. *Anderson*, 656 F.2d 528 (9th Cir. 1981); *Schwager* v. *Sun Oil Company of Pennsylvania*, 591 F.2d 58 (10th Cir. 1979); *Cova* v. *Coca-Cola Bottling Co. of St. Louis*, 574 F.2d 958 (3rd Cir. 1978); M. I. Schickman, *The Strengths and Weaknesses of the McDonnell Douglas Formula in Jury Actions under the ADEA*, 32 Hastings L.J. 1239 (1981); Note, *Proving Discrimination under the Age Discrimination in Employment Act*, 17 Ariz. L. Rev. 495 (1975); Annot., *Proving that Discharge Was Because of Age, for Purposes of Age Discrimination in Employment Act (29 USCS secs. 621 et seq.)*, 58 A.L.R. Fed. 94 (1982), Sec. 3, y casos allí citados.

*McDonnell Douglas Corp.*, supra, versaba sobre un alegado discrimen racial. La persona había sido despedida por una corporación, como parte de un plan general de reducción de operaciones. Por motivo de su despido participó en varias manifestaciones contra la empresa, que entorpecían su funcionamiento. Posteriormente, al mejorar la situación económica, la empresa comenzó a contratar empleados, pero debido a su participación activa en las protestas no lo reemplearon. La acción judicial fue originalmente desestimada. El Tribunal Supremo de los Estados Unidos revocó y expresó:

> The complainant in a Title VII trial must carry the initial burden under the statute of establishing a prima facie case of racial discrimination. This may be done by showing (i) that he belongs to a racial minority; (ii) that he applied and was

qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications. Pág. 802.

■ Cumplidos esos requisitos surge un caso prima facie de discrimen, cuyo efecto es variar hasta cierto punto la prueba requerida de cada parte. En ese sentido, el caso prima facie de discrimen constituye una especie de presunción.([1]) 9 Wigmore, *Evidence*, Sec. 2494 (Chadbourn rev. 1981); M. A. Méndez, *Presumptions of Discriminatory Motive in Title VII Disparate Treatment Cases*, 32 Stan. L. Rev. 1129 (1980).

■ Normalmente el demandante tiene el peso de la prueba para demostrar su caso. Ello conlleva el peso de *producir* la evidencia, y *convencer* al juzgador. Véase, N. Hecht y W. Pinzler, *Rebutting Presumptions: Order Out of Chaos*, 58 B.U.L. Rev. 527 (1978). Según *McDonnell Douglas Corp.*, una vez se establece un caso prima facie de discrimen, el peso de *producir* la evidencia se transfiere al demandado; el peso de *convencer* al juzgador permanece siempre sobre el reclamante. *Board of Trustees* v. *Sweeney*, 439 U.S. 24 (1978); *Furnco Construction Corp.* v. *Waters*, 438 U.S. 567 (1978); *Texas Dept. of Community Affairs* v. *Burdine*, 450 U.S. 248 (1981). Comment, *Civil Rights, Defendant's Burden of Proof in Title VII Disparate Treatment Cases*, 21 Washburn L.J. 143 (1981); Note, *Standard for Rebutting a Prima Facie Title VII Violation: Texas*

---

([1]) Compárese con la definición de presunción de la Regla 13(A) de las de Evidencia de 1979:

"Una presunción es una deducción de un hecho que la ley autoriza a hacer o requiere que se haga de otro hecho o grupo de hechos previamente establecidos en la acción. A ese hecho o grupo de hechos previamente establecidos se le denomina hecho básico, al hecho deducido mediante la presunción se le denomina hecho presumido."

Véase también, E. Chiesa, *Sobre la Validez Constitucional de las Presunciones*, 14 Rev. Jur. U.I.A. 727 (1980).

*Department of Community Affairs v. Burdine*, 23 B.C.L. Rev. 263 (1981); Note, *Disparate Impact and Disparate Treatment: The Prima Facie Case under Title VII*, 32 Ark. L. Rev. 571 (1978).

En otras palabras, el efecto de un caso prima facie de discrimen es el de meramente imponer al demandado la obligación de "articular" (*articulate*) una explicación razonable, que, de ser creída por el tribunal, sería suficiente para justificar el despido. Para rebatir la presunción no es menester convencer al juzgador de que ésta fue la verdadera causa. *Texas Dept. of Community Affairs*, supra. Tampoco precisa que esa explicación constituya, en estricto derecho, "justa causa" para el despido —*cf. Loeb*, supra; C. Sullivan, *Federal Statutory Law of Employment Discrimination*, N.Y., Bobbs-Merrill Company, Inc., 1980, Secs. 11.5(c) y 11.5(e)— sino que meramente sea suficiente para sostener la conclusión de que el *motivo determinante* no fue discriminatorio. Si el demandado es incapaz de producir esta evidencia, el juzgador vendrá obligado a concluir que el despido fue discriminatorio.

Ahora bien, aun si el demandado alega una justificación razonable no concluye la controversia. En esa situación debe dársele oportunidad al demandante de demostrar, mediante preponderancia de la prueba, que el motivo aducido constituye un mero pretexto y en realidad ha habido discrimen. Esto se puede hacer, entre otras formas, mediante evidencia circunstancial o estadística de otros individuos en la misma situación del demandante que, o bien se les ha discriminado por la misma razón, o bien han sido retenidos precisamente porque no pertenecen al mismo grupo minoritario. *McDonnell Douglas Corp.*, supra. Véase, también, G. Harper, *Statistics as Evidence of Age Discrimination*, 32 Hastings L.J. 1347 (1981).

La adopción de esta norma evidenciaria tiene como fundamento que el patrono demandado, por su posición más ventajosa, generalmente tiene mayor acceso a la evidencia

del despido y puede probar la ausencia del discrimen con relativa facilidad. De otro lado, el empleado usualmente tiene que depender de evidencia circunstancial. En *McDonnell Douglas Corp.* se añade el *caveat* de que la doctrina no es de aplicación inflexible, sino que admite variaciones según los hechos de cada caso.

■ Esta doctrina ha sido elaborada posteriormente en otras decisiones del Supremo federal: *Board of Trustees*, supra; *Furnco Construction Corp.*, supra; *Texas Dept. of Community Affairs*, supra. En el contexto de las acciones bajo el ADEA, los requisitos han sido interpretados como que el demandante tiene que demostrar: (i) que estaba dentro del grupo protegido por el estatuto, esto es, dentro de las edades especificadas; (ii) que fue despedido; (iii) que estaba calificado para ocupar el puesto; y (iv) que fue reemplazado por alguien más joven. *Loeb*, supra; Schickman, *op. cit.* Una vez se demuestra la concurrencia de estos factores, se presume que ha habido un discrimen por edad, a menos que el patrono produzca evidencia que, de ser creída, explique razonablemente el despido.

### B. *La causa de acción bajo la Ley Núm. 100*

■ La Ley Núm. 100 de 30 de junio de 1959, según enmendada, 29 L.P.R.A. sec. 146 *et seq.*, reconoce una causa de acción para toda persona que hubiese sido despedida o de otro modo se viere negativamente afectada en su empleo por motivo de su edad, raza, color, religión, origen o condición social. Esta ley, aunque menos detallada que su contraparte federal, sí contiene una disposición específica en cuanto a la presunción de discrimen. Su Art. 3 dispone:

> Se presumirá que cualquiera de los actos mencionados en las secciones precedentes fueron cometidos en violación de las secs. 146 a 151 de este título, cuando los mismos hayan sido realizados sin justa causa. Esta presunción será de carácter controvertible.(2) 29 L.P.R.A. sec. 148.

---

(2) Así, para efectos de lo que podría constituir justa causa, es orientador lo dispuesto por el Art. 2 de la Ley sobre Despidos Ilegales:

██ Para determinar cuál es el efecto de esta presunción es necesario acudir a lo dispuesto en las Reglas de Evidencia de 1979. A este respecto la Regla 14 reza:

Regla 14. *Efecto de las presunciones en casos civiles*

En una acción civil, una presunción impone a la parte contra la cual se establece la presunción el peso de la prueba para demostrar la inexistencia del hecho presumido. Si la parte contra la cual se establece la presunción no ofrece evidencia para demostrar la no existencia del hecho presumido, el juzgador debe aceptar la existencia de tal hecho. Si se presenta evidencia en apoyo de la determinación de la no existencia de tal hecho, la parte que interesa rebatir la presunción debe persuadir al juzgador de que es más probable la no existencia que la existencia del hecho presumido.

Su lectura pone de manifiesto que, contrario a la norma del caso *prima facie* de discrimen bajo la doctrina de *McDonnell Douglas Corp.*, el efecto de la presunción es de transferir al demandado no sólo el peso de *producir* la evi-

---

"Se entenderá por justa causa para el despido de un empleado de un establecimiento:

"(a) Que el obrero siga un patrón de conducta impropia o desordenada.

"(b) La actitud del empleado de no rendir su trabajo en forma eficiente o de hacerlo tardía y negligentemente o en violación de las normas de calidad del producto que se produce o maneja por el establecimiento.

"(c) Violación reiterada por el empleado de las reglas y reglamentos razonables establecidas para el funcionamiento del establecimiento siempre que copia escrita de los mismos se haya suministrado oportunamente al empleado.

"(d) Cierre total, temporero o parcial de las operaciones del establecimiento.

"(e) Los cambios tecnológicos o de reorganización, así como los de estilo, diseño o naturaleza del producto que se produce o maneja por el establecimiento y los cambios en los servicios rendidos al público.

"(f) Reducciones de empleos que se hacen necesarias debido a una reducción en el volumen de producción, ventas o ganancias, anticipadas o que prevalecen al ocurrir el despido.

"No se considerará despido por justa causa aquel que se hace por mero capricho del patrono o sin razón relacionada con el buen y normal funcionamiento del establecimiento." 29 L.P.R.A. sec. 185b.

Véase, además, *Wolf* v. *Neckwear Corporation*, 80 D.P.R. 537 (1958).

dencia, si que también el de *persuadir* al juzgador. 1 *Práctica Procesal Puertorriqueña* 118 (1979).

Nuestra regla constituye un enfoque de nuevo cuño. Antes, el efecto de una presunción se limitaba a transferir a la parte contraria el peso de producir la evidencia. *Ramos* v. *Aut. Fuentes Fluviales*, 86 D.P.R. 603 (1962).[3] A tenor con ese enfoque prevalecía entonces el mismo efecto que rige para un caso prima facie de discrimen bajo *McDonnell Douglas Corp.* Esta visión, asociada tal vez incorrectamente con el ilustre profesor Thayer, es comúnmente conocida como el *"bursting bubble theory"*[4] debido a que la presunción que se crea es susceptible de ser derrotada con mucha facilidad. Por esta razón ha sido controvertible y severamente criticada,[5] aun cuando predomina en la mayoría de las jurisdicciones de Estados Unidos, incluso la federal, donde se encuentra recogida en una de sus variantes, en la Regla 301 de Evidencia. *Fed. Rules Evid.*, 28 U.S.C.; *Weinstein's Evi-*

---

[3] Allí expresamos:

"[E]l efecto de la presunción no es transferir al demandado el peso de la prueba en el sentido de requerirle que presente evidencia de mayor peso o valor probatorio que la ofrecida por el demandante; es simplemente requerirle la presentación de prueba para evitar que se dicte sentencia a favor del demandante." Págs. 613–614. Véase, sin embargo, *Carrión* v. *Tesorero de P.R.*, 79 D.P.R. 371, 382 (1956).

[4] Esta teoría no es totalmente uniforme. Se han diseñado diversas variantes dirigidas a tratar de remediar su debilidad, pero sin llegar a concederle el efecto "fuerte" invocado por el profesor Morgan y otros tratadistas. Véase, por ejemplo, la exposición que hace de éstas C. Mueller en *Instructing the Jury upon Presumptions in Civil Cases: Comparing Federal Rule 301 with Uniform Rule 301*, 12 Land & Water L. Rev. 219 (1977).

[5] Para casos que reflejan distintas posturas sobre este aspecto, consúltense: *McCormick's Handbook of the Law of Evidence*, 2da ed., St. Paul, Minnesota, West Publishing Co., 1972, Sec. 345, pág. 819; 9 Wigmore, *Evidence*, Secs. 2490–2491 (Chadbourn rev. 1981); E. Cleary, *Presuming and Pleading: An Essay on Juristic Immaturity*, 12 Stan. L. Rev. 5 (1959); J. McBaine, *Burden of Proof: Presumptions*, 2 UCLA L. Rev. 13 (1954); E. Morgan y J. Maguire, *Looking Backward and Forward at Evidence*, 50 Harv. L. Rev. 909 (1937); A. Gausewitz, *Presumptions in a One-Rule World*, 5 Vand. L. Rev. 324 (1952); C. Laughlin, *In Support of the Thayer Theory of Presumptions*, 52 Mich. L. Rev. 195 (1953); Annot., *Effect of Presumption as Evidence or upon Burden of Proof, Where Controverting Evidence is Introduced*, 5 A.L.R. 3d 19 (1965).

*dence,* New York, N.Y., Matthew Bender, 1982, Vol. 1, Sec. 301(02), pág. 301–28 *et seq.*; 21 Wright y Graham, *Federal Practice and Procedure: Evidence,* Sec. 5126 (1977). [6]

■ La versión adoptada por nuestra Regla 14, originalmente propulsada por el también reputado profesor Morgan, persigue dar un efecto "fuerte" a la presunción, de modo que este mecanismo adquiera una eficacia plena en la práctica. La Regla 14 ocasiona que el peso de la prueba se desplace totalmente de una parte a otra como consecuencia de la presunción. El demandado viene obligado a probar la no ocurrencia del hecho mediante preponderancia de la prueba, esto es, a probar que la no ocurrencia del hecho es más probable que su ocurrencia. Regla 10 de Evidencia; *McCormick's Handbook of the Law of Evidence,* 2da ed., St. Paul, Minnesota, West Publishing Co., 1972, Sec. 339, pág. 794.

■ En este contexto, la presunción establecida por nuestra Ley Núm. 100, contra discrimen, significa que el patrono demandado viene obligado a probar que el despido *no* fue discriminatorio. Nuevamente es preciso señalar la diferencia con la doctrina federal. En nuestra jurisdicción no es necesario que el patrono afirmativamente "articule" una explicación razonable para el despido, aunque en la práctica ésta sería la forma más certera y conveniente de destruir la presunción. Basta con que pruebe, aun mediante evidencia circunstancial, que la razón para el despido *no* fue discriminatoria para que la presunción quede destruida. Esto último, sin embargo, ha de hacerse mediante preponderancia de la prueba, lo que representa un *quantum* mayor de prueba que el exigido en la jurisdicción federal.

---

[6] La versión final de la Regla 301 federal es distinta de las propuestas originales del Tribunal Supremo y de la Cámara de Representantes. Ha sido también severamente criticada. *Moore's Federal Practice,* 2da ed., New York, Matthew Bender, 1982, Vol.10, Sec. 301.04; C. Fornoff, *Presumptions—The Proposed Federal Rules of Evidence,* 24 Ark. L. Rev. 401 (1971); D. Louisell, *Construing Rule 301: Instructing the Jury on Presumptions in Civil Actions and Proceedings,* 63 Va. L. Rev. 281 (1977); Muller, *op. cit.*

Por otro lado, debe notarse que si el demandado efectivamente prueba la inexistencia de discrimen, concluirá la controversia y resultará innecesaria otra prueba adicional.

## III

Aclarado el trasfondo evidenciario, concentrémonos en la solución del presente caso. Hemos visto que la Ley Núm. 100 y la federal difieren en cuanto al efecto de la presunción que el demandante tiene a su disposición en este tipo de caso. En este sentido, la legislación local le es más favorable que su contraparte federal. Requiere del demandado una prueba más vigorosa para rebatir la presunción. Por tal razón, es posible concebir que en algunas controversias el resultado dependa, en última instancia, de cuál de los dos estatutos gobierna la acción. En el de autos no es menester realizar esa incursión pues, bajo ambos, se impone un mismo resultado.

Bajo el ADEA, la señora Ibáñez cumplió con los requisitos de *McDonnell Douglas Corp.* para establecer un caso prima facie de discrimen. Demostró que: (1) pertenecía a la clase protegida (tenía 63 años); (2) estaba calificada para ocupar la posición; (3) fue despedida; y (4) fue sustituida por una persona más joven.

Una vez establecido el caso prima facie, el discrimen se presume y el patrono tiene la obligación de "articular una explicación razonable para el despido", aunque no tiene que probarla mediante preponderancia de la evidencia. Molinos lo logró mediante la explicación brindada por el señor Mathias, de que la había despedido por su "falta de lealtad" al utilizar información confidencial de la empresa para sus propios fines.

Aunque en su sentencia el tribunal concluyó que el testimonio del señor Mathias no merecía crédito y su explicación constituía un mero pretexto, lo cierto es que la propia señora Ibáñez confirmó la veracidad del incidente. En esas circunstancias el tribunal no estaba en libertad de des-

cartar su testimonio sobre este particular. *Miranda Soto* v. *Mena Eró*, 109 D.P.R. 473 (1980); *Alicea* v. *Sucn. F. Gil Rivera*, 87 D.P.R. 789 (1963).

Lo mismo ocurre en cuanto a su conclusión de que la explicación era un pretexto para encubrir el discrimen. La misma era suficiente para rebatir la presunción. Sin embargo, el tribunal concluyó lo contrario, enfatizando que la empresa le había pagado a la señora Ibáñez la mesada correspondiente a un despido injustificado, a tenor con lo dispuesto en el Art. 1 de la Ley Núm. 80 de 30 de mayo de 1976 (29 L.P.R.A. sec. 185a). (7) A su juicio, ello era indicativo de que el despido realmente había sido injustificado. De esa apreciación dedujo que se trataba simplemente de un pretexto para ocultar el discrimen por razón de edad. Erró.

▆▆▆ Hemos visto que la explicación requerida de un demandado para rebatir un caso prima facie bajo *McDonnell Douglas Corp.* no tiene que constituir *justa causa* en estricto derecho. Todo lo que se requiere es una explicación *razonable* que, de ser creída, demuestre que la causa del despido no fue discriminatoria. La explicación sometida por el señor Mathias satisface plenamente ese criterio.

Rebatida esa presunción, correspondía a la demandante probar, a través de preponderancia de la prueba, que el motivo aducido era un pretexto. De ordinario ello se logra mediante la presentación de otra evidencia, circunstancial o

---

(7) "Todo empleado de comercio, industria o cualquier otro negocio o sitio de empleo designado en lo sucesivo como el establecimiento, donde trabaje mediante remuneración de alguna clase, contratado sin tiempo determinado, que fuere despedido de su cargo sin que haya mediado una justa causa, tendrá derecho a recibir de su patrono en adición al sueldo que hubiere devengado:

"(a) el sueldo correspondiente a un mes por concepto de indemnización;

"(b) Una indemnización progresiva adicional equivalente a una semana por cada año de servicio.

"Los años de servicio se determinarán sobre la base de todos los períodos de trabajo anteriores acumulados que el empleado haya trabajado para el patrono antes de su cesantía, pero excluyendo aquellos que por razón de despido o separación ulterior, le hayan sido compensados o hayan sido objeto de una adjudicación judicial."

de otra índole, que apunte hacia la existencia del discrimen. En el presente caso, la prueba adicional aportada por la demandante no respalda esta conclusión. Más aún, sugiere lo contrario. Es forzoso concluir que no probó su caso bajo el ADEA.

Igual resultado se impone bajo la Ley Núm. 100. La situación bajo nuestro estatuto es distinta. Para activar la presunción se exige que el despido hubiera sido realizado sin justa causa. Bajo las definiciones del Art. 2 de la Ley de Despidos Injustificados, la señora Ibáñez cumplió con este requisito y tenía derecho a hacer valer la presunción a su favor.

Ahora bien, el efecto de esta presunción es de variar por completo el peso de la prueba, a tenor con la Regla 14 de las de Evidencia. Para rebatirla, Molinos tenía que probar que la existencia del discrimen era menos probable que su inexistencia. No era preciso, bajo este estatuto, probar la causa del despido. Sin embargo, el tribunal de instancia erróneamente aplicó la doctrina de *McDonnell Douglas Corp.* a esta causa y exigió esa prueba.

La evidencia circunstancial presentada satisfactoriamente descarta que el motivo determinante fuera la edad. Tenía 60 años cuando fue originalmente contratada. La empresa tenía una alta proporción de secretarias de más de 40 años. Ambos detalles son indicadores de que no existía una política discriminatoria de contratación fundada en la edad. Asimismo, la actitud del propio señor Mathias, quien en todo momento se mostraba complacido con su trabajo, al punto de recomendarla para recibir aumentos salariales, es significativa de que la edad de la señora Ibáñez no afectaba para nada su rendimiento en el trabajo ni su prestigio ante su superior. Además, la secretaria de "Manpower" fue a la empresa precisamente a sustituir temporalmente a la señora Ibáñez, que se iba de vacaciones. Ella misma la entrenó. Esto refleja que antes del incidente en que la señora Ibáñez cuestionó la veracidad de la explicación brindada

por el señor Mathias sobre su aumento de sueldo, no había intención ni interés alguno en sustituirla. Después del despido, la empleada de "Manpower" fue prontamente reemplazada, y finalmente el puesto fue ocupado por una persona de 57 años. Todos estos datos, que no están en controversia, resultan incompatibles con la conclusión del tribunal sentenciador de que el despido se debió al deseo del señor Mathias de sustituir a la señora Ibáñez por una secretaria más joven. No es sostenible que la edad fuera el motivo determinante. Si alguna inferencia cabe, sería que la verdadera causa fue el incidente.

Para contrarrestar esta evidencia la demandante descansa *solamente* en que la notificación del despido viniera abruptamente mes y medio luego de ocurrido el incidente. Interpreta que esto se debió a que el señor Mathias no tomó esa decisión sino hasta haberla comparado con la empleada más joven, prefiriendo a ésta. El argumento es especulativo. Hasta el momento del incidente en que ella cuestionó la veracidad de la explicación del señor Mathias, éste se había mostrado muy complacido con sus servicios. Los hechos tienden a sostener que no fue sencilla para él la decisión de despedirla. Surgió tras una honda reflexión. Tampoco es irrazonable pensar que esta desagradable decisión fue pospuesta el mayor tiempo posible. El inminente regreso de la señora Ibáñez hizo su manifestación indispensable. No consideramos excesivo el intervalo transcurrido en el presente caso entre el incidente y la notificación. Bajo la Ley Núm. 100 tampoco se probó un caso de discrimen por razón de edad.

Por los fundamentos expuestos, *se dictará sentencia y se revocará la del Tribunal Superior, Sala de San Juan, fechada 25 de marzo de 1982.*

El Juez Asociado Señor Rebollo López concurre en el resultado sin opinión. El Juez Presidente Señor Trías Monge se inhibió.