# 97 DTA 149

## TRIBUNAL DE CIRCUITO DE APELACIONES
## CIRCUITO REGIONAL DE SAN JUAN

ZAIDA E. MORRIS ANDINO
Demandante-Apelada

v.

THE TRAVELERS INSURANCE CO., ETC.
Demandados-Apelantes

Núm. KLAN-96-00119

San Juan, Puerto Rico, a 27 de junio de 1997

Panel integrado por su Presidente, Juez Negrón Soto
y los Jueces González Román y Urgell Cuebas

Negrón Soto, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

The Travelers Insurance, Co., Joaquín Godoy e Irene Soika, recurren ante nos de la sentencia parcial dictada el 12 de enero de 1996 por el Tribunal de Primera Instancia, Sala Superior de San Juan, imponiéndoles responsabilidad por hostigamiento racial en el empleo.

## I

La demandante-apelada, señora Zaida E. Morris Andino, en adelante Morris, quien en la sentencia del Tribunal de Primera Instancia aparece descrita como: *"una elegante mujer de mediana edad, de la*

*raza negra, con pelo rizado natural de modales finos y culta",* trabajó en el Departamento de Grupos en las oficinas de Travelers Insurance Company, en lo sucesivo Travelers, desde el 16 de enero de 1980 hasta el 12 de abril de 1990, primero como empleada temporera y luego con carácter permanente. Morris fue reclutada por el señor Ricardo González y trabajó bajo la supervisión de la señora Irene Soika, en adelante Soika, y de la Sra. Tristán, cuando Soika fue reubicada y comenzó a trabajar fuera de la oficina que estaba Morris. En atención a esto, debemos señalar que fue durante la supervisión de Soika cuando sucedió la alegada cadena de eventos discriminatorios. Ejemplo de dichos eventos lo fueron: la crítica al pelo *"afro"* de Morris, al uso de una pantalla adicional (dormilona) y al uso de mahones en el empleo; la actitud de burla de ésta cuando Morris tenía que fumar en el pasillo como consecuencia de la política de *"no fumar"* que se había implantado en la compañía, además de que Soika no le permitía que fumara, ya que la marca de cigarrillos que Morris utilizaba le era desagradable; el trato despectivo recibido por ésta; y el uso de lenguaje soez y humillante por Soika.

El 24 de octubre de 1980, Morris le envió un memorando al señor Joaquín Godoy, Gerente de la División de Mercadeo de Travelers, quejándose del trato discriminatorio y de la pobre evaluación que la supervisora le hiciera. Así las cosas, el asunto llegó hasta el señor Richard Will, gerente de personal del área de Miami de Travelers. Este ordenó que se hiciera la investigación correspondiente y no se realizaron acciones correctivas por parte de los señores Godoy y González. Entonces, Morris fue reevaluada positivamente por Soika. Morris recibió otras evaluaciones posteriores positivas. Sin embargo, sin precisar hechos, la primera indicó que el maltrato por parte de la segunda continuó. Morris también tuvo que ausentarse con frecuencia a su empleo, ya que su madre, quien padecía de Alzheimer, se enfermó. Como consecuencia de esto, el señor Godoy le permitió a Morris que trabajara durante un horario flexible. Transcurridos varios años, el 12 de abril de 1990, el señor Godoy tuvo que llamarle la atención a Morris, indicándole que *"dos ejecutivos que le habían dado un trabajo para que ella hiciera se habían quejado de que la labor todavía no se había hecho, ya que la apelada se había negado a hacerlo."* (Exposición Narrativa de la Prueba Estipulada, pág. 8.) Esta se molestó, por lo que se marchó y no regresó a trabajar.

El 1 de mayo de 1991, luego de haberle enviado varias cartas a Morris mediante las cuales se le comunicaban sus derechos y luego de que ésta agotara sus beneficios de incapacidad, la demandante-recurrida fue despedida de su empleo con Travelers.

El 12 de abril de 1990, Morris reclamó los beneficios que la ley remedial de la Corporación del Fondo del Seguro del Estado ofrece y solicitó ayuda profesional a raíz de la forma discriminatoria en que alegadamente se le trataba en su taller de trabajo. El 30 de agosto de 1990, el Fondo del Seguro del Estado, luego de revisar la totalidad del expediente de Morris, determinó que ella no había sufrido accidente ni enfermedad ocupacional de las protegidas por la Ley de Compensaciones por Accidentes del Trabajo, 11 L.P.R.A. sec. 1 *et seq.*

El 20 de noviembre de 1990, Morris presentó una querella administrativa ante la Unidad Antidiscrimen del Departamento del Trabajo y Recursos Humanos, alegando discrimen y hostigamiento por razón de raza al amparo de la Ley 100 del 30 de junio de 1959, 29 L.P.R.A. sec. 146 et. seq. y del Título VII de la Ley Federal de Derechos Civiles de 1967, según enmendada, 42 U.S.C.A. sec. 2000e. Al presentar la querella ante la Unidad Antidiscrimen quedó interrumpido el término para acudir ante un tribunal de justicia. 29 L.P.R.A. sec. 150. En dicha querella, Morris alegó que durante los diez años que trabajó para Travelers fue objeto de incontables humillaciones y burlas con relación a su origen o condición racial.

El 27 de agosto de 1991, la Unidad Antidiscrimen emitió una determinación mediante la cual procedió a cerrar con una determinación de no causa probable de discrimen, luego de concluir la investigación sobre las alegaciones presentadas por Morris. Mediante carta del 8 de noviembre de 1991, el Secretario del Trabajo y Recursos Humanos, Lcdo. Ruy Delgado Zayas, le expresó a Morris que: *"estimamos que este caso no debe tramitarse a nivel judicial"*; no obstante, en el segundo párrafo de dicha carta el Secretario señala que la determinación de la agencia no constituia una adjudicación en los méritos, por lo que si así ella lo entendía podía iniciar un proceso judicial en un tribunal de justicia. (Apéndice Conjunto, pág. 62).

Morris instó también querella ante la Equal Employment Opportunity Commission, solicitando los remedios provistos bajo el Título VII de la Ley de Derechos Civiles Federales, *supra*. El 18 de septiembre de 1991, la E.E.O.C. concluyó a base de lo previamente determinado por el Departamento del Trabajo de Puerto Rico que no hubo discrimen contra Morris. La E.E.O.C. le advirtió a Morris que transcurrido el término de noventa (90) días del recibo de la notificación de la determinación de la agencia, sólo podía apelar al Tribunal de Distrito Federal. Morris no utilizó ese recurso procesal. El 29 de octubre de 1992, luego de haber instado demanda ante el Tribunal de Primera Instancia, Sala de San Juan, la E.E.O.C. emitió una segunda determinación de ausencia de causa por discrimen racial.

Inconforme con las anteriores determinaciones, el 30 de octubre de 1991 Morris instó demanda de daños y perjuicios, alegando que con motivo del discrimen y hostigamiento racial había sufrido patentes daños, compensables bajo el Artículo 1802 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 5141. El 4 de mayo de 1994, el Tribunal de Primera Instancia ordenó se bifurcara la controversia, de manera que el juicio señalado para el 16 de mayo siguiente se ciñera a la cuestión de responsabilidad únicamente.

El 16 de mayo de 1995, en ocasión del juicio en los méritos, y antes de comenzar con la presentación de la prueba, Travelers solicitó que se ventilara el procedimiento bajo lo dispuesto en la Ley 100, *supra*. El tribunal recurrido denegó dicha solicitud, pero dio oportunidad para que se probara que el despido fue justificado. Oída y aquilatada por ese Foro la totalidad de la prueba testifical y documental presentada, el 12 de enero de 1996 éste dictó sentencia parcial, determinó que había responsabilidad civil y condenó a Travelers a pagar la suma de $5,000.00 por concepto de honorarios de abogado, más los intereses desde la radicación de la demanda.

Los demandados-apelantes apelaron ante nos, imputándole al Tribunal de Primera Instancia haber errado al no aplicar la doctrina de cosa juzgada; al no resolver conforme al derecho sustantivo y procesal que provee la Ley 100; al imponerle honorarios de abogado por concepto de temeridad; al no determinar que Morris probó los elementos de la causa de acción de daños y perjuicios; y, por último, haber actuado con pasión, prejuicio y parcialidad en su determinación.

Mediante la Resolución de 18 de abril de 1996, este tribunal ordenó a las partes presentar una exposición estipulada o, en su defecto, una exposición narrativa de los testimonios orales pertinentes a los errores planteados. Recibida dicha exposición y presentados los alegatos de las partes estamos en posición de resolver este recurso.

## II
Consideremos el primer señalamiento de error de los demandados-apelantes.

La doctrina de cosa juzgada por ser de estirpe civilista esta estatuida en el Artículo 1204 del Código Civil, 31 L.P.R.A. sec. 3343, el cual dispone que: *"[p]ara que la presunción de cosa juzgada surta efecto en otro juicio, es necesario que entre el caso resuelto por la sentencia y aquel en que ésta sea invocada, concurra la más perfecta identidad entre las cosas, las causas, las personas de los litigantes y la calidad con que lo fueron."* Lo mismo aplica para el caso de decisiones administrativas que se pretenden relitigar en un foro judicial. *Acevedo v. Western Digital*, \_\_\_ D.P.R. \_\_\_ (1993), **96 J.T.S. 42.** Su aplicación tiene las siguientes tres vertientes: dentro de la misma agencia a sus propias decisiones; interagencialmente; es decir, de una agencia a otra; y, entre las agencias y los tribunales. *Pagán Hernández v. U.P.R.*, 107 D.P.R. 720, 733 (1978). La aplicabilidad de la doctrina no es automática. Judicialmente existe el poder de modificar y hasta rechazar las determinaciones administrativas cuando ese curso sea el más justo y conveniente en orden al interés público. Igualmente, subsiste la facultad de evaluar si las partes han podido litigar oportuna y adecuadamente la controversia envuelta en el foro administrativo. *Rodríguez Oyola v. Machado Díaz*, \_\_\_ D.P.R. \_\_\_ (1993994), **94 J.T.S. 82,** pág. 12006. Por ello, la doctrina de cosa juzgada debe aplicarse, cuando:

*"..una agencia administrativa actúa en una capacidad judicial y resuelve controversias de hechos ante sí, las cuales las partes han podido litigar en forma oportuna y adecuada. Los tribunales no han vacilado en aplicar la doctrina de cosa juzgada para imponer descanso en la controversia....Desde entonces, la jurisprudencia norteamericana se ha desarrollado en términos de aplicar la doctrina de cosa juzgada cuando las razones para ello estén presentes con toda su fuerza, modificada cuando*

*sean necesarias algunas alteraciones, y rechazada cuando las razones en contra de su aplicación sean de mayor peso que aquellas a su favor... Dicho de otro modo, la aplicabilidad de la doctrina en el campo administrativo es flexible y depende de la naturaleza de la cuestión que se plantea en el ámbito judicial."* Rodríguez Oyola, supra. (Enfasis en el original).

No siendo automática la aplicabilidad de la doctrina de cosa juzgada, tenemos que analizar los procedimientos y las determinaciones alcanzadas en las distintas agencias donde Morris se querelló como resultado de la conducta discriminatoria de sus supervisores.

Morris solicitó primeramente los beneficios del Fondo del Seguro del Estado, (Fondo), bajo los remedios que la Ley de Compensaciones por Accidentes del Trabajo podía proveerle. 11 L.P.R.A. sec. 1, *et seq.* Los accidentes del trabajo compensables por el Fondo, son de carácter remedial y no es un seguro para indemnizar por daños, sino *"para compensar, en la medida limitada establecida por la propia ley, la incapacidad productiva que sobreviene a un obrero como consecuencia de un accidente o enfermedad ocupacional."* Morell v. F.S.E., 110 D.P.R. 709, 713 (1981); *Villanueva Pérez v. Comisión Industrial,* 109 D.P.R. 790, 795 (1980). El Fondo esta incapacitado para otorgar cualquier reparo a los daños ocasionados a Morris por Travelers. Por ello, la decisión del Fondo de que Morris *"no sufrió accidente ni enfermedad ocupacional de las protegidas por la Ley de Compensaciones por Accidentes del Trabajo"* no constituyó cosa juzgada que impidiera que un tribunal de justicia adjudicara la controversia sobre discrimen y los daños que esta acción causara a Morris. Tampoco existe identidad entre las cosas, las causas y las personas de los litigantes, pues el proceso no era uno contencioso, sino remedial.

La segunda reclamación relativa a la acción discriminatoria de Travelers fue presentada ante la Unidad Antidiscrimen del Departamento del Trabajo y Recursos Humanos. El 30 de noviembre de 1990, esta Unidad Antidiscrimen citó a Travelers para que compareciera el 21 de febrero de 1991 a una *"Conferencia de Descubrimiento de Evidencia",* en donde se discutirían las alegaciones. Luego de la agencia concluir su investigación, determinó que no había causa probable de discrimen, por lo que procedió a cerrar el caso. Allí no se celebró procedimiento formal alguno donde las partes hubiesen tenido oportunidad de hacer un amplio descubrimiento de prueba, ni presentar prueba y contrainterrogar a los testigos. No existió la oportunidad de litigar en forma *"oportuna y adecuada".* Rodríguez Oyola v. Machado Díaz, supra.

Debemos tener presente que existe una clara política pública, de origen constitucional como estatutario, que prohibe el discrimen en el empleo, cualquiera que sea su forma. *Santini v. Serv. Air,* ___ D.P.R. ___ (1994), **94 J.T.S. 121,** pág. 184. Siendo el discrimen en el empleo de tan alto interés público, no puede impedirse que un trabajador que experimente discrimen por razón de raza o color en los umbrales de un nuevo milenio, pueda recurrir a un tribunal de justicia a vindicar sus derechos constitucionales. No habiéndose podido litigar oportuna y adecuadamente la controversia envuelta en el foro administrativo y siendo ésta de tan alto interés público, concluimos que tampoco constituye cosa juzgada la determinación del Departamento del Trabajo; más aún, cuando por voz de su propio Secretario, le expresó a la allí querellante que: *"...por no constituir la determinación antes mencionada una adjudicación en sus méritos por corresponder esto en última instancia a un tribunal, le señalamos de su derecho a tramitar el mismo por abogado particular..."* (Apéndice Conjunto, pág. 62).

La determinación de no causa probable de discrimen a que llegara la E.E.O.C. el 18 de septiembre de 1991 tampoco constituye cosa juzgada para efectos del Tribunal de Primera Instancia de Puerto Rico en la causa de acción que se originara bajo el estatuto local de Ley 100, *supra.* La referida notificación expresaba que Morris perdería el derecho a presentar acción ante el Tribunal de Distrito Federal para el Distrito de Puerto Rico, si luego de pasar noventa (90) días desde esa notificación no acudía al referido tribunal. Ciertamente, luego de transcurrido el período de noventa (90) días de esta notificación de la E.E.O.C. se pierde el derecho a demandar, ante el Tribunal de Distrito Federal, pero no para presentar cualquier otra acción que surgiese bajo algún estatuto local. 42 U.S.C.A. secs. 2000e-5(b),(f)(1). *Matos Molero v. Roche Products,* ___ D.P.R. ___ (1993), **93 J.T.S. 6,** pág. 10317.

Por lo anterior, concluimos que no es aplicable la doctrina de cosa juzgada al caso ante nos, por lo que no erró el Foro recurrido al considerar y juzgar la presente causa de acción.

## III

En segundo lugar, alegan los apelantes que incidió el tribunal recurrido al no aplicar el derecho sustantivo y procesal que provee la Ley 100, *supra*, y que no se probaron los elementos de la acción de daños y perjuicios, mediando pasión, prejuicio y parcialidad en su determinación.

La Constitución del Estado Libre Asociado de Puerto Rico establece en su Art. II, Sec. 1, que *"[n]o podrá establecerse discrimen alguno por motivo de raza, color, sexo, nacimiento, origen o condición social ni ideas políticas o religiosas".*

Este precepto constitucional fue recogido por la Ley Núm. 100, *supra*. Al aprobar esta ley, la Asamblea Legislativa ratificó estos postulados constitucionales y dispuso unos remedios, dentro del contexto obrero-patronal para poner en vigor esa disposición de la Carta de Derechos. Con ello dotó a la clase obrera de los instrumentos necesarios para que quedara protegida del discrimen por razón de edad, raza, color, sexo, origen social o nacional, condición social, e ideas políticas o religiosas. *María de Jesús Santa Santiago v. Lightalarm Inc.*, SSCE-92-0025, Resolución de 26 de enero de 1993, págs. 6-7.

El Art. 3 de la Ley Núm. 100, *supra*, establece expresamente una presunción de discrimen en ausencia de justa causa para el despido. Dicha disposición de ley dispone que:

"Se presumirá que cualquiera de los actos mencionados en las secciones precedentes fueron cometidos en violación de la secs. 146 a 151 de este título, cuando los mismos hayan sido realizados sin justa causa. Esta presunción será de carácter controvertible."

Establecida la presunción, corresponde al patrono demandado rebatirla estableciendo mediante preponderancia de la prueba que el despido no fue discriminatorio. *Odriozola v. S. Cosmetic Dist. Corp.*, 116 D.P.R 485, 502 (1985). El patrono debe probar que la inexistencia del discrimen es menos probable que su existencia. *Ibañez v. Molinos de P.R., Inc.*, 114 D.P.R. 42, 53 (1983).

De la sentencia recurrida surge que el Foro de instancia brindó amplia oportunidad a los apelantes para rebatir la presunción de despido injustificado de la Ley 100, *supra*. Así lo expresó al señalar lo siguiente:

*"A pesar de que el día que comenzó el juicio, el Tribunal denegó la solicitud de la parte demandada de que el caso se viera bajo la Ley 100, en el ejercicio de nuestra facultad y ante la duda modificamos y dimos amplia oportunidad a la parte demandada para rebatir la presunción de despido injustificado de la Ley 100. Concedimos amplia oportunidad a la demandada para que mediante la presentación de sus testigos y su evidencia documental presentara como defensa afirmativa prueba que estableciera mediante preponderancia de la evidencia que hubo justa causa para el despido. Dicha prueba no nos convenció...".* (Sentencia recurrida, pág. 24).

No coincidimos con la conclusión del Foro recurrido. De la exposición narrativa estipulada, Testimonio de Zaida Morris, demandante, pág. 8, surge que *"mientras la apelada se encontraba disfrutando del horario flexible en la oficina, el Sr. Godoy se le acercó para llamarle la atención debido a que dos ejecutivos que le habían dado un trabajo para que ella hiciera se habían quejado de que la labor todavía no se había hecho ya que la apelada se había negado a hacerlo. Declaró que a ella le molestó de la manera que Godoy le había hablado y manifestó haberle expresado a Tristán lo que le había sucedido. Inmediatamente luego de dicho incidente, la apelada declaró que se marchó y no regresó a trabajar."* Por otro lado, la sentencia recurrida estableció que a la demandante se le informó que si no regresaba a trabajar sería despedida el 1 de mayo de 1991 ya que sus beneficios y licencia para ausentarse terminaban en esa fecha. Esta no regresó, por lo que fue despedida.

En fin, de lo antes expuesto surge que Morris fue despedida de su empleo no por motivos de índole racial --incidentes, que de ser ciertos, ocurrieron con mucha anterioridad al incidente que sostuvo el despido-- sino como consecuencia de sus ausencias. Además, a Morris se le brindó la oportunidad de regresar a su empleo antes de ser despedida, cosa que no hizo. Por lo tanto, concluimos que erró el

Tribunal de Primera Instancia al determinar que los demandados no pudieron refutar la presunción de que el despido fue uno sin justa causa.

Consideremos ahora si erró el Tribunal de Primera Instancia al determinar que los demandados fueron responsables de los daños que sufrió Morris como consecuencia del discrimen por razón de raza y de su posterior despido.

En *Acevedo v. Western Digital Caribe, Inc.*, ___ D.P.R. ___ (1996), **96 J.T.S. 42,** pág. 878, nuestro más alto Foro estableció que:

*"el remedio exclusivo de la Ley Núm. 80 no excluye una causa de acción por responsabilidad civil de un patrono si esta reclamación emana de una fuente independiente al despido del empleado. Posteriormente, en Arroyo v. Rattan Specialties Inc., supra, tuvimos la oportunidad de delimitar el alcance de la excepción a la norma general, y expusimos que el obrero no puede estar limitado al remedio exclusivo de la Ley Núm. 80 cuando el despido se hace con el propósito, o tiene el efecto de frustrar o subvertir una clara política pública. Id., a la pág. 65. Aclaramos que la Ley Núm. 80 "no puede operar para privar al obrero de los remedios apropiados para vindicar eficazmente sus derechos constitucionales."* (Enfasis Suplido) Véase, también, *María de Jesús Santa Santiago v. Lightalarm Inc.*, supra, pág. 7; *Rivera v. Security Nat. Life Ins. Co.*, 106 D.P.R. 517 (1977).

En el caso de autos, Morris alegó que su despido se debió a discrimen por motivo de raza, por lo que --además del remedio que podía ésta tener en el ámbito de la legislación obrero-patronal-- tenía a su disposición el poder presentar una causa de acción bajo el Artículo 1802 del Código Civil de Puerto Rico, *supra*, mediante la cual el demandante tiene que probar ordinariamente su caso y donde no existe presunción alguna en contra del demandado.

Es sabido que bajo el Art. 1802 del Código Civil, *supra*, todo daño o perjuicio moral o material, da lugar a la correspondiente reparación si concurren tres elementos: la realidad del daño sufrido; un acto u omisión culposa o negligente de otra persona; y el correspondiente nexo causal entre el daño y la acción u omisión negligente. *Monllor Arzola v. Sociedad Legal de Gananciales*, ___ D.P.R. ___ (1995), **95 J.T.S. 77.**

Como antes expresáramos, en el caso ante nos, el despido se debió a las repetidas ausencias de Morris, quien se ausentó desde el 12 de abril de 1990 hasta que fue despedida el 1 de mayo de 1991, y a que ésta no regresó al trabajo a pesar de que se le dio la oportunidad de regresar cuando se le agotaron los beneficios y la licencia que estaba disfrutando. Sobre los incidentes constitutivos del alegado discrimen racial a los que Morris atribuye su despido, como señalamos previamente, se tratan de actos anteriores. Aunque no nos obligan, recordemos que sobre esos actos se pasó juicio por distintas agencias administrativas, no logrando Morris convencerlas del alegado discrimen racial.

Entre dichos incidentes, debemos mencionar la crítica que Soika hizo al pelo de Morris, y al uso de una pantalla adicional por Morris, el hecho de que a Morris se le prohibia ir a trabajar en mahones y que Soika le prohibia fumar, pues a ésta le molestaba la marca de cigarrillo que Morris utilizaba. Por otro lado, debemos añadir que el señor González, quien entrevistó a Morris y la contrató, era de la raza negra. Además, Soika había vivido con un hombre de la raza negra y el señor Godoy había sido activista en pro de los derechos civiles de los negros. En fin, de los hechos que tuvo ante sí el tribunal apelado, no se desprende una acción de discrimen por razón de raza, sino que por el contrario podemos concluir que en el caso de autos el despido fue uno justificado.

Por lo tanto, determinamos que erró el Tribunal de Primera Instancia al abusar de su discreción en la apreciación de la prueba y al declarar a los demandados responsables en daños y perjuicios.

## IV

Los demandados-apelantes, también alegan que incidió el Tribunal de Primera Instancia al imponerle a ellos el pago de $5,000.00 por concepto de honorarios de abogado por temeridad en la sentencia sumaria parcial recurrida. Tal actuación hace palpable el abuso de la discreción del Foro apelado en este caso, ya que bajo ninguna circunstancia procedía la imposición de honorarios de abogado por temeridad contra los demandados en esta etapa de los procedimientos, donde todavía no había recaído sentencia final ni se habían cuantificado los daños. Veamos.

A esos efectos la Regla 43.1 de las de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 43.1, establece que una sentencia, *"...incluye cualquier determinación del tribunal que resuelva finalmente la cuestión litigiosa y de la cual pueda apelarse o solicitarse revisión. Una sentencia es final cuando resuelve el caso en sus méritos y termina el litigio entre las partes, en tal forma que no queda pendiente nada más que la ejecución de la sentencia."* Camaleglo v. Dorado Wings, Inc., 118 D.P.R. 20, 26 (1986).

La Regla 44.1(d) de las de Procedimiento Civil, *supra*, dispone que:

*"En caso que cualquier parte o su abogado haya procedido con temeridad o frivolidad, el tribunal deberá imponerle en su sentencia al responsable el pago de una suma por concepto de honorarios de abogado que el tribunal entienda correspondan a tal conducta."* (Enfasis nuestro).

El propósito principal de la citada Regla 44.1(d) de Procedimiento Civil, *supra*, es el de penalizar a aquellas partes que por su temeridad, obstinación, contumacia e insistencia en una actitud frívola o desprovista de fundamento, obligan a otra parte a sufrir las molestias, gastos, trabajo e inconveniencias de un litigio innecesario. *Corpack, Art. Printing v. Ramallo Brothers,* 125 D.P.R. 724, 737, (1990). En atención a esto, nuestro más alto Foro resolvió en *Fernández v. San Juan Cement Co., Inc.,* 118 D.P.R. 713, 718-719 (1987) que:

*"[e]l propósito principal de autorizar la imposición de honorarios de abogado en casos de temeridad, es la de establecer una penalidad a un litigante perdidoso que por su terquedad, obstinación, contumacia e insistencia en una actitud desprovista de fundamentos, obliga a la otra parte, innecesariamente, a asumir las molestias, gastos, trabajo e inconveniencias de un pleito."* Soto v. Lugo, 76 D.P.R. 444 (1954).

Una sentencia parcial dictada en un caso de daños y perjuicios en la que un tribunal fracciona los elementos básicos de negligencia y daños, al disponer del primer aspecto de responsabilidad, no resuelve finalmente la cuestión litigiosa. Mientras no se determine el remedio, o sea, la cuantía del daño a que tiene derecho el demandante, la decisión emitida es una resolución interlocutoria. *Díaz v. Navieras de P.R.,* 118 D.P.R. 297, 301 (1987). Si bien es cierto que la determinación que hiciera el tribunal apelado se tituló *"sentencia"*, ésta, en correcto rigor jurídico, es sólo un dictamen judicial que no dispone de la totalidad de la cuestión litigiosa por faltar la determinación de los daños. Por consiguiente, esa no era la sentencia a que se refiere la Regla 44.1 (d), *supra*, y el Foro apelado tenía que esperar a que se determinaran los daños para pasar juicio sobre la temeridad de los demandados.

No obstante, en el caso de marras, por razón de la decisión que tomamos al revocar dicha sentencia parcial por surgir que los demandados no son responsables de los hechos que le imputó Morris, es forzoso concluir que la imposición por concepto de honorarios de abogado es improcedente.

**V**

Finalmente, es menester señalar que en vista de lo antes resuelto es innecesario profundizar en la falta de prueba sobre la alegada causa de acción de Morris y a las alegaciones de pasión, prejuicio y parcialidad imputadas por los demandados-apelantes al tribunal sentenciador.

Procede dejar sin efecto el dictamen judicial parcial del Foro apelado que impone responsabilidad a los demandados-apelantes por el alegado discrimen por razón de raza que le imputó sin razón la demandante.

**VI**

En atención a lo anteriormente expresado, se revoca la sentencia parcial recurrida, se declara sin lugar la demanda objeto de este recurso y se le impone el pago de las costas a la demandante para los demandados.

Así lo acordó el Tribunal y lo certifica la Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General