# 2002 DTA 90

**TRIBUNAL DE CIRCUITO DE APELACIONES**
**CIRCUITO REGIONAL VII DE CAROLINA Y FAJARDO**

PEDRO FLORES ROSARIO
Demandante-Apelante

v.

GOBIERNO MUNICIPAL DE FAJARDO
Demandado-Apelado

Núm. KLAN-01-00856

San Juan, Puerto Rico, a 23 de abril de 2002

Panel integrado por su Presidente, el Juez Miranda de Hostos,
la Juez Hernández Torres y el Juez Martínez Torres

Martínez Torres, Juez Ponente

### TEXTO COMPLETO DE LA SENTENCIA

Comparece la parte demandante-apelante, Pedro Flores Rosario, y nos solicita que revisemos una sentencia emitida por el Tribunal de Primera Instancia, Sala Superior de Fajardo (Hon. Ismael R. Colón Pérez Juez), el 25 de junio de 2001, la cual fue notificada y puesta al correo el 8 de agosto de 2001. En dicha sentencia, el Tribunal de Primera Instancia declaró con lugar la moción de desestimación presentada por la parte demandada-apelada, Municipio de Fajardo, al amparo de la Regla 39.2(c) de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 39.2(c), y en su consecuencia, desestimó la demanda presentada por la parte demandante-apelante, Flores Rosario.

Luego de estudiados los hechos y el derecho aplicable, se confirma la sentencia apelada.

### I

El demandante-apelante, Pedro Flores Rosario, comenzó a trabajar en el Departamento de Obras Públicas del Municipio de Fajardo para el mes de junio de 1969 como obrero mediante contrato transitorio. (E.N.P., pág. 2). Luego de tres (3) años, el municipio lo promovió al puesto de capataz de brigada de bitumul del Departamento de Obras Públicas Municipal. (E.N.P., pág. 2). Para el 1989, cuando el demandante-apelante, Flores Rosario, cumplió los sesenta y dos (62) años de edad, le solicitó al Municipio de Fajardo que le redujera su jornada de trabajo de modo que los ingresos devengados de su contrato con el municipio no excedieran los ingresos establecidos por el seguro social y poder recibir el mismo. (E.N.P., págs. 2-3). El Municipio de Fajardo, parte demandada-apelada, accedió a la petición de Flores Rosario y le redujo su jornada de trabajo a cuatro (4) días a la semana. (E.N.P., pág. 3). Esto hizo que la parte demandante-apelante, Flores Rosario, se convirtiera en un empleado transitorio a jornada parcial. Para los años de 1992 y 1996, el Municipio de Fajardo publicó convocatorias para el puesto de capataz de brigada y en ninguna de estas ocasiones el demandante-apelante, Flores Rosario, compitió para ellas.

A consecuencia de un Plan de Cesantías que el Municipio de Fajardo aprobó en 1997 es que el 12 de febrero de 1998 dicho municipio le notificó al demandante-apelante, Flores Rosario, que no se le renovaría más su contrato de trabajo con el municipio, efectivo el 28 de febrero de 1998. (E.N.P., pág. 2).

La misiva mediante la cual el municipio le notificó a Flores Rosario su cesantía, lee como sigue:

*"12 de febrero de 1998*

*Pedro Flores Rosario*

*Capataz de Brigada*
*Departamento de Obras Públicas*

*Estimado Sr. Flores Rosario:*

*Como es de su conocimiento, a usted se le extendió un nombramiento transitorio hasta el 28 de febrero de 1998, a tenor con lo dispuesto en el Artículo 12.004 de la Ley de Municipios Autónomos (Ley Núm. 81 del 30 de agosto de 1991, según enmendada).*

*A partir de la fecha antes indicada, sus servicios como empleado transitorio de este Gobierno Municipal habrán de cesar. Por consiguiente, le aconsejo que se comunique con nuestra Oficina o nos haga una visita para aclarar cualquier información relativa a los balances de vacaciones que tenga acumulados hasta el 28 de febrero de 1998; la forma en que habremos de liquidar dicho balance y cualquier otra duda relacionada con su empleo con este Municipio.*

*Agradeceremos mucho su colaboración y servicios prestados.*

*Cordialmente,*

*(firma)*
*José A. Ramírez Ruiz*
*Director de Recursos Humanos"*

(Ap. Apelación VI, pág. 26).

El 13 de marzo de 1998, el Municipio de Fajardo, parte demandada-apelada, promulgo la resolución número 26, serie de 1997-1998, mediante la cual autorizó al Director de Recursos Humanos a eliminar algunos puestos de vacantes en el Departamento de Obras Públicas Municipal a consecuencia de falta de trabajo por motivo de la privatización de los servicios del recogido de desperdicios sólidos. (AP. Apelación XXX, pág. 149.) Entre los puestos que se eliminaron mediante dicha resolución se encuentran los siguientes: dos (2) capataz de brigada; un (1) conductor de vehículos de motor livianos, cinco (5) conductores de vehículos de motor pesados, dos (2) trabajadores, veintinueve (29) trabajadores de control ambiental y diecinueve (19) trabajadores de conservación.

El demandante-apelante, Flores Rosario, trabajó de manera ininterrumpidamente desde junio de 1969 hasta el 28 de febrero de 1998, fecha en la cual era efectivo que no se le renovaría más su contrato. (E.N.P., pág. 2). A la fecha en la cual el demandante-apelante dejó de trabajar para el Municipio de Fajardo, tenía 71 años de edad y ocupaba la plaza de capataz de brigada de *"bitumul"* del Departamento de Obras Públicas del Municipio de Fajardo, del cual devengaba un salario de trescientos treinta y cinco dólares ($335.00) quincenales. (E.N.P., pág. 2).

El 16 de febrero de 1999, el demandante-apelante, Flores Rosario, presentó ante el Tribunal de Primera Instancia una demanda mediante la cual alegó que tenía un derecho propietario sobre su plaza, de la cual alegó que fue cesanteado sin justa causa y sin darle el debido proceso de ley. Solicitó treinta mil dólares ($30,00.00) como compensación. Además, alegó que fue víctima de discrimen por razón de edad, al amparo de la Ley Núm. 100 de 30 de junio de 1959, 29 L.P.R.A. sec. 146 *et. seq.* y la Carta de Derechos de la Persona de Edad Avanzada, 8 L.P.R.A. sec. 341 *et. seq.*, y reclamó la cantidad de cuarenta mil dólares ($40,000.00) por los daños y

sufrimientos que esto supuestamente le causó.

El 19 de octubre de 1999, el Municipio de Fajardo presentó su contestación a la demanda. El Municipio de Fajardo negó las alegaciones de discrimen por edad y alegó que la terminación del contrato de empleo transitorio a tiempo parcial de la parte demandante-apelante, Flores Rosario, obedeció a la implementación de un plan de cesantías adoptado por el municipio por motivo de falta de trabajo.

El 4 de enero de 2001, el Tribunal de Primera Instancia celebró la vista en su fondo. La evidencia ofrecida por la parte demandante-apelante, Flores Rosario, consistió de prueba documental y de su propio testimonio.

La parte demandante-apelante, Flores Rosario, manifestó lo siguiente el día del juicio, según la exposición narrativa de la prueba aprobada por el Tribunal de Primera Instancia:

*"El señor Flores declaró que era el capataz principal, y que, aunque era transitorio, tenía nombramiento de capataz. Declaró que en los dos (2) últimos años de trabajo, el Director de Obras Públicas Municipales, Sr. José A. Vázquez, le daba las ordenes al Sr. Feliciano en lugar de dárselas al Sr. Flores, a pesar de que él era el único capataz de la brigada. El Sr. Flores declaró que fue sustituido en el puesto por el Sr. Pablo Feliciano, quien tenía menos de 60 años porque todavía no recibía el seguro social, le faltaban unos años. El Sr. Flores expresó que el Sr. Pablo Feliciano hacía otros trabajos de plomería o algo así para el Municipio. El señor Flores comentó que no sabe quién tenía más tiempo trabajando en el Municipio porque no sabe específicamente en que, tiempo llegó el señor Pablo Feliciano al Municipio, pero que éste llegó a la brigada como dos años o más antes de ser cesanteado. Declaró que cree que Pablo Feliciano no tenía nombramiento de capataz porque él era primero plomero antes de ponerlo ahí por el lado de él. El señor Flores expresó que nunca habló con el Sr. José Vázquez con respecto a las órdenes que éste le daba al Sr. Pablo Feliciano.*

*Declaró el señor Flores que en el año 1996 le notificó al Director de Obras Públicas del Municipio, Sr. José A. Vázquez, que iba a coger unos días para operarse de "telillo" en los ojos y éste le señaló que porqué no se retiraba.*

*El señor Flores declaró que aproximadamente un año antes de suspenderlo, al señor Flores y a casi todas las personas que trabajan en la brigada, se le requirió someter varios documentos a la oficina de personal del Municipio, tales como certificado de nacimiento y de buena conducta, y él entendío [sic] que dichos documentos eran para que se le concediera la permanencia. Indicó que el Municipio nunca le ofreció la permanencia al señor Flores.*

*El señor Flores declaró que tiene un expediente de personal intachable; que nunca fue objeto de amonestaciones o reprimendas y que nunca solicitó para el Retiro de Empleados del ELA.*

*Declaró que no se le concedió vista administrativa previo a, ni después de la terminación de su nombramiento transitorio."*

(E.N.P., págs. 3-4).

En el contrainterrogatorio, la parte demandante-apelante, Flores Rosario, testificó lo siguiente:

*"El señor Flores declaró que el único capataz con nombramiento que había en la brigada de bitumul era él. Indicó que no sabía cuándo el Sr. Pablo Feliciano comenzó a trabajar en el Municipio.*

*El señor Flores declaró que no cotizó para el retiro ni para la Asociación de Empleados porque no se lo descontaban.*

*Declaró que llegó a un arreglo con el Municipio para trabajar solamente cuatro (4) días para no afectar el Seguro Social. Admitió que esa solicitud fue presentada por él a ver si el Municipio aceptaba y éste aceptó. De esa forma, él podía trabajar y recibir los beneficios del Seguro Social también.*

*A preguntas del abogado del Municipio de Fajardo, el señor Flores admitió que el último nombramiento que recibió tenía fecha de terminación del 28 de febrero de 1998, por lo que la carta que recibió del Municipio fue como un recordatorio de que trabajaría hasta el 28 de febrero de 1998.*

*A preguntas del abogado del Municipio, el señor Flores declaró: que el Municipio de Fajardo le concedió los días para la operación del ojo; que el Municipio nunca formuló cargos en su contra o le envió cartas de amonestación; que él nunca tuvo que llevar un caso contra el Municipio; que sus relaciones con el alcalde habían sido buenas; que no sabía cuál era la plaza para la cual él entendía que lo iban a nombrar ni los requisitos; que nadie le dijo que le iban a dar permanencia; que él entendía que por el tiempo que llevaba trabajando en el Municipio, tenía derecho a la permanencia.*

*El señor Flores declaró que si el Municipio le hubiese dado la permanencia a los 65 años tenía que trabajar cinco (5) días y tenía ciertos derechos a retiro y otras cosas que siendo transitorio no las tenía; que si trabaja [sic] cinco (5) días teniendo permanencia no recibiría el Seguro Social, pero sus ingresos le cubrían el Seguro Social; que sabía que si recibía el Seguro Social y llegaba a los 70 años, de ahí en adelante no le perjudicaba para recibir los beneficios del Seguro Social el tener la permanencia; que él cree que se cotiza para el retiro por 30 años.*

*El señor Flores declaró que no sabía si alguna otra persona no se le había renovado el contrato, que quizás hubo otras personas, pero que él no sabía quiénes. El abogado del Municipio le preguntó al señor Flores si conocía a alguna persona de una lista de 31 empleados (Exhibit 24), y si sabía que a éstos tampoco se les renovó el contrato. De dicha lista, el señor Flores declaró conocer sólo a dos personas: Bartola Mendoza Estrada y Pablo Ayala Horta, pero declaró que no sabía que a ninguno de ellos no se les había renovado el contrato.*

*El señor Flores declaró que él no sabía porqué se usa el plan de cesantías, pero que, en cuanto a él, entiende que se utilizó para perseguirlo por ser una persona mayor de edad.*

*Declaró que nunca vió convocatorias para ningún puesto y nunca participó de ellas.*

*A preguntas del abogado del Municipio, el señor Flores declaró que un empleado transitorio es una persona que no tenía permanecía y que la podía dejar sin trabajo en cualquier momento; que sabía que sus nombramientos decían de tal fecha a tal fecha; que sabía que cada vez que se vencía el nombramiento, no tenía derecho a seguir trabajando, a menos que se le hiciera otro nombramiento; que cada vez que le daban el nombramiento, entendía que era por el término que decía ese nombramiento, que no sabía si se abrieron plazas de capataz de brigada en el Municipio."*

(E.N.P., págs. 3-5).

Luego del desfile de prueba de la parte demandante-apelante, Flores Rosario, el Municipio de Fajardo solicitó la desestimación de la causa de acción al amparo de la Regla 39.2 de Procedimiento Civil, *supra*. Argumentó la parte demandada-apelada, Municipio de Fajardo, que por los hechos hasta el momento probados y a tenor con la ley aplicable, la parte demandante-apelante, Flores Rosario, no tenía derecho a la concesión de remedio alguno debido a que éste no había probado sus alegaciones. En respuesta a la solicitud del Municipio de Fajardo, la parte demandante-apelante, Flores Rosario, invocó a su favor la aplicación de la Ley Núm. 56 de 16 de agosto de 1989 y la Ley Núm. 80 de 26 de julio de 1996.

El 25 de junio de 2001, el Tribunal de Primera Instancia dictó sentencia mediante la cual declaró con lugar la desestimación presentada por el demandado-apelado, Municipio de Fajardo, al amparo de la Regla 39.2 de Procedimiento Civil, *supra*, y en su consecuencia desestimó la demanda presentada por la parte demandante-apelante.

Inconforme, la parte demandante-apelante, Flores Rosario, apeló el 6 de septiembre de 2001 ante este Tribunal de Circuito de Apelaciones. Planteó que erró el Tribunal de Primera Instancia al apreciar errónea y parcialmente la prueba. También señaló que erró el tribunal de instancia al declarar sin lugar la demanda aun cuando alegadamente, Flores Rosario tenía un interés propietario adquirido y supuestamente no se le dio el debido proceso de ley. Además, el demandante-apelante, Flores Rosario, señaló que erró el Tribunal de Primera Instancia al sostener que no hubo discrimen por razón de edad. Luego de la aprobación de la exposición narrativa de la prueba oral, la parte demandada-apelada, Municipio de Fajardo, presentó, el 3 de abril de 2002, su alegato en oposición al recurso de apelación. Con el beneficio de dicha comparecencia, nos encontramos en posición de resolver.

## II
## A. Criterios para revisar la apreciación de la prueba

En cuanto a la apreciación de la prueba desfilada ante el Tribunal de Primera Instancia, el alcance de la revisión judicial sobre cuestiones de hecho está regulado por lo dispuesto en la Regla 43.2 de las Reglas de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 43.2, la cual en lo pertinente dispone:

*"Regla 43.2. Declaración de derechos probados y conclusiones de derechos*

*En todo pleito, el tribunal especificará los hechos probados y separadamente consignará sus conclusiones de derecho y ordenará que se registre la sentencia que corresponda; y al conceder o denegar injunctions interlocutorios, el tribunal, de igual modo, consignará las determinaciones de hechos y conclusiones de derechos que constituyan los fundamentos de su resolución. Las determinaciones de hechos basadas en testimonio oral no se dejarán sin efecto, a menos que sean claramente erróneas, y se dará la debida consideración a la oportunidad que tuvo el tribunal sentenciador para juzgar la credibilidad de los testigos. Las determinaciones de hechos de un comisionado, en tanto en cuanto el tribunal las adopte, serán consideradas como determinaciones de hechos del tribunal."* [Enfasis Suplido.].

Respecto a la revisabilidad de la prueba testifical, es norma establecida aquélla que nos impide intervenir con la apreciación de la prueba que hizo el Tribunal de Primera Instancia, en ausencia de pasión, prejuicio, parcialidad o error manifiesto. *Colón González v. KMART*, Opinión de 26 de junio de 2001, **2001 J.T.S. 98**, a la pág. 1484; *Trinidad García v. Chade*, Opinión de 18 de enero de 2001, **2001 J.T.S. 10**, a la pág. 794.

En reiteradas ocasiones, el Tribunal Supremo ha reconocido como norma fundamental de nuestro ordenamiento jurídico que los tribunales apelativos, en ausencia de error, pasión, prejuicio y parcialidad, no deben intervenir con las determinaciones de hechos, la apreciación de la prueba y las adjudicaciones de credibilidad realizadas por los tribunales de instancia. *Argüello López v. Argüello García*, Opinión de 31 de agosto de 2001, **2001 J.T.S. 127**, pág. 94; *López Vicil v. ITT Intermedia Inc.*, 142 D.P.R. 857, 864 (1997).

También ha enfatizado que *"un foro apelativo no puede descartar y sustituir por sus propias apreciaciones, basadas en un examen del expediente del caso, las determinaciones tajantes y ponderadas del foro de instancia."* *Argüello López v. Argüello García, supra; Rolón García y otros v. Charlie Car Rental*, Opinión de 2 de junio de 1999, **99 J.T.S. 89**, pág. 1099.

Las determinaciones sobre la credibilidad que le dio a los testigos el tribunal sentenciador *"es merecedora de*

*gran deferencia por parte del tribunal apelativo, por cuanto es ese juzgador quien, de ordinario, está en mejor posición para aquilatar la prueba testifical desfilada, ya que él fue quien oyó y vio declarar a los testigos."* Argüello López v. Argüello García, supra; Pueblo v. Bonilla Romero, 120 D.P.R.92, 111 (1987).

Sin embargo, aunque el arbitrio del juzgador de hechos es respetable y merece deferencia, no es absoluto y *"una apreciación errónea de la prueba no tiene credenciales de inmunidad frente a la función revisora de este Tribunal".* Méndez v. Morales 142 D.P.R. 26, 36 (1996); Rivera Pérez v. Cruz Corchado, 119 D.P.R. 8, 14 (1987). Por ello, aunque haya evidencia que sostenga las conclusiones de hecho del tribunal de instancia, si de un análisis de la totalidad de la evidencia el tribunal revisor queda convencido que se cometió un error, como cuando las conclusiones están en conflicto con el balance más racional, justiciero y jurídico de la totalidad de la evidencia recibida, las consideraremos claramente erróneas. *Méndez v. Morales, supra; Abudo Servera v. A.T.P.R.,* 105 D.P. R. 728, 731 (1977).

## B. La apreciación de la prueba en este caso

La parte demandante-apelante, Flores Rosario, plantea en su escrito de apelación que erró el Tribunal de Primera Instancia al hacer las siguientes determinaciones de hechos:

*"1. El demandante Pedro Flores Rosario comenzó a trabajar como obrero del Departamento de Obras Públicas del Municipio de Fajardo en junio de 1969. Durante el tiempo que trabajó en el Municipio de Fajardo lo hizo mediante contrato transitorio a jornada parcial el cual se renovó continuamente.*

*2. El señor Flores era empleado transitorio a jornada parcial por acuerdo con el Municipio de Fajardo en el que se beneficiaba el Sr. Flores, pues las condiciones establecidas le permitían a éste recibir los beneficios del seguro social federal mientras trabajaba.*

*3. El 28 de febrero de 1998, el señor Flores fue cesanteado del puesto (transitorio a tiempo parcial) que ocupaba como capataz de brigada como resultado de la implantación de un Plan de Cesantías y haberle notificado al demandante el 12 de febrero de 1998, de acuerdo a los requerimientos de ley.*

...

*7. El demandante, Pedro Flores Rosario, no aportó evidencia que mereciera la credibilidad del Tribunal sobre la alegación de que fue sustituido en la plaza de la cual fue cesanteado, por otra persona más joven que él.*

*8. El demandante, Pedro Flores Rosario, no aportó evidencia para acreditar la existencia actual de la plaza de capataz de brigada de la cual fue cesanteado.*

*9. El demandante, Pedro Flores Rosario, no aportó evidencia para acreditar que tiene derecho a algún remedio bajo la Carta de Derechos de la Persona de Edad Avanzada (8 LPRA 341)."*

Flores Rosario, parte demandante-apelante, alega que las determinaciones de hechos número uno y dos de la sentencia del Tribunal de Primera Instancia son erróneas porque alegadamente éste era empleado transitorio a jornada completa y no fue hasta el año 1989 que acordó con el Municipio de Fajardo que le redujeran sus horas de trabajo para poderse a coger a los beneficios del seguro social. De la exposición narrativa de la prueba aprobada por el Tribunal de Primera Instancia no surge que la parte demandante-apelante trabajara a jornada completa. Por el contrario, lo que quedó probado ante el foro de primera instancia fue que la parte demandante-apelante, Flores Rosario, comenzó a trabajar para el Municipio de Fajardo en el año 1969, y que siempre lo hizo mediante contrato transitorio que le fue renovado continuamente. También quedó probado que Flores Rosario era empleado transitorio a jornada parcial por acuerdo con el Municipio de Fajardo, ya que dicha condición le permitía recibir

tanto los ingresos de su empleo como los del seguro social.

También alega la parte demandante-apelante, Flores Rosario, que erró el Tribunal de Primera Instancia al hacer la determinación de hechos número tres, que establece que el demandante-apelante, Flores Rosario, dejó de trabajar debido a la implementación de un plan de cesantías promulgado por el Municipio de Fajardo. Al respecto, hay que señalar que el plan de cesantías fue adoptado por el Municipio de Fajardo en 1997. Sin embargo, la parte demandante-apelante, Flores Rosario, señala que la Resolución Número 26, Serie 1997-1998, aprobada por la Asamblea Municipal de Fajardo el 13 de marzo de 1998, constituyó el plan de cesantías y que esto fue posterior a la terminación de su contrato. Por el contrario, dicha resolución lo que autorizó es que el Director de Recursos Humanos a eliminara algunos puestos como consecuencia de la privatización del recogido de desperdicios sólidos, a tenor con el plan de cesantías promulgado previamente, en el 1997. Por consiguiente, el plan de cesantías fue anterior a la fecha de terminación del contrato de empleo de la parte demandante-apelante, Flores Rosario. Como consecuencia de lo anteriormente expuesto, es forzoso concluir como lo hizo el Tribunal de Primera Instancia, que el demandante-apelante, Flores Rosario, dejó de laborar al finalizar su contrato y que el mismo no se renovó debido a la implementación de un plan de cesantías promulgado por el Municipio de Fajardo en el año 1997.

Alegó también la parte demandante-apelante, Flores Rosario, que erró el Tribunal de Primera Instancia al afirmar en la determinación de hechos séptima de su sentencia que dicha parte no aportó evidencia que mereciera la credibilidad del foro de instancia sobre la alegación de que fue sustituido en la plaza por otra persona más joven que él. Sobre este aspecto, la exposición narrativa de la prueba aprobada por el Tribunal de Primera Instancia no demostró de forma categórica que la parte demandante-apelante, Flores Rosario, hubiera establecido que en su puesto se nombró otra persona más joven que él. Flores Rosario no le pudo demostrar al juzgador de los hechos que Pablo Feliciano ocupó su puesto y que en efecto éste era más joven, ya que basó su testimonio en inferencias.

Además, la parte demandante-apelante, Flores Rosario, alegó que erró el Tribunal de Primera Instancia al apreciar la prueba y hacer la determinación de hechos octava en la que determinó que dicha parte no aportó evidencia que acreditara la existencia de la plaza de capataz de brigada en el Municipio de Fajardo. Por el contrario, lo que evidencia la Resolución 26, serie 1997-98, aprobada por la asamblea Municipal de Fajardo, es que se autorizó la eliminación de la plaza que ocupaba la parte demandante-apelante, lo que elimina la posibilidad de que alguien ocupara la misma. Flores Rosario no aportó ningún tipo de evidencia que pusiera al foro de primera instancia en condiciones para determinar que subsistió el puesto de capataz de brigada.

Por último, señala la parte demandante-apelante, Flores Rosario, que erró el foro de primera instancia al apreciar la prueba y establecer en su determinación de hechos novena que dicha parte no aportó evidencia para acreditar que tiene derecho a algún remedio a tenor con lo dispuesto en la Carta de Derechos de la Persona de Edad Avanzada, *supra*. El Artículo 3 de la Carta de Derechos de la Persona de Edad Avanzada, 8 L.P.R.A. sec. 343, establece que toda persona de edad avanzada tendrá derecho a desempeñar una profesión, ocupación u oficio ajustado a la medida de sus condiciones y capacidades sin consideraciones a la edad. De acuerdo con la prueba desfilada y creída por el Tribunal de Primera Instancia, la parte demandada-apelada, Municipio de Fajardo, no renovó el contrato de la parte demandante-apelante, Flores Rosario, siguiendo los parámetros del plan de cesantías. La no renovación se debió a la falta de trabajo causada por la privatización del servicio de recogido de desperdicios sólidos. Por lo tanto, este tipo de actuación por sí sola no puede constituir una actuación discriminatoria al amparo de la Carta de Derechos de la Persona de Edad Avanzada.

Por todo lo anteriormente expuesto y en ausencia de pasión, prejuicio, parcialidad o error manifiesto, este tribunal revisor no intervendrá con la apreciación de la prueba que hizo el Tribunal de Primera Instancia en sus determinaciones de hechos uno, dos, tres, siete, ocho y nueve.

# III

## A. El interés propietario en su puesto de los empleados transitorios municipales y el debido proceso de ley

Un empleado público tiene un reconocido interés en la retención de su empleo, si dicho interés está protegido por ley o cuando las circunstancias del empleo le crean una expectativa de continuidad. *Depto. Recs. Naturales v. Correa*, 118 D.P.R. 689, 693 (1987); *Morales Narváez v. Gobernador*, 112 D.P.R. 761, 767 (1982); *Pierson Muller I v. Feijoó*, 106 D.P.R. 838, 852 (1978).

La Ley Núm. 5 de 14 de octubre de 1975, según enmendada, mejor conocida como la Ley de Personal del Servicio Público, establece que *"[l]as personas nombradas en puestos de duración fija tendrán status transitorio."* 3 L.P.R.A. sec. 1333 (12). Véase, *Depto. Recs. Naturales v. Correa, supra*, a la pág. 695. El Tribunal Supremo ha expresado que un empleado público que ostenta un nombramiento transitorio no tiene una expectativa real de que tal nombramiento le brinda permanencia en el empleo, ni derecho a que el mismo se le extienda constantemente. *Aponte Burgos v. Aponte Silva*, Opinión de 7 de mayo de 2001, **2001 J.T.S. 69**, a la pág. 1242.

*"Examinada la Ley de Personal, el reglamento y el historial legislativo de esa medida, concluimos que un nombramiento transitorio genera expectativa de retención en el empleo sólo durante el término del nombramiento. Ante el claro mandato legislativo, resulta inescapable concluir que bajo las disposiciones de la Ley de Personal del Servicio Público, un empleado transitorio no goza de derecho a permanencia en su puesto ni tiene expectativa legítima de retención en el mismo, una vez ha vencido el nombramiento."* [Enfasis suplido.]

*Depto. Recs. Naturales v. Correa, supra*, a la pág. 699.

También se ha resuelto que como los empleados transitorios no tienen una expectativa de continuidad en su empleo, una vez vence el término de su contrato; de ordinario, pueden ser cesanteados al vencer su contrato de empleo, sin que sea necesario celebrar una vista previa. *Aponte Burgos v. Aponte Silva*, Opinión de 7 de mayo de 2001, **2001 J.T.S. 69**, a la pág. 1242.

Ello no constituye una violación al debido proceso de ley.

Respecto a los empleados transitorios municipales, el Artículo 12.004 de la Ley Núm. 81 de 30 de agosto de 1991, según enmendada, mejor conocida como la Ley de Municipios Autónomos 21 L.P.R.A. sec. 4554, establece lo siguiente:

*"§ 4554. Sistema de personal - Estado legal de los empleados.*

*Los empleados municipales serán clasificados como de confianza, probatorios de carrera, regulares de carrera, transitorios e irregulares.*

*...*

*c) Empleados transitorios. - El nombramiento transitorio no [podrá] exceder de un (1) año, con excepción de las personas nombradas en proyectos especiales de duración fija sufragados con fondos federales o estatales, cuyo nombramiento corresponderá a las normas que disponga la ley bajo la cual sean nombrados.*

*Se podrán efectuar nombramientos transitorios en puestos permanentes de carrera según se determine mediante reglamento.*

*El examen para las personas a reclutarse mediante nombramientos transitorios consistirá de una evaluación*

*a los únicos fines de determinar si reúnen los requisitos mínimos para la clase de puesto en el cual serán nombrados y las condiciones generales de ingreso al servicio público.*

*Los empleados con nombramientos transitorios no se considerarán empleados de carrera ni se podrán nombrar en puestos de carrera con status probatorio o regular, a menos que pase por los procedimientos de reclutamiento y selección que dispone este subtítulo para el servicio de carrera."* [Enfasis Suplido.]

## B. La aplicabilidad de la Ley de Servicio de Público a los empleados municipales

Al promulgarse la Ley Núm. 5 de 14 de octubre de 1975, mejor conocida como la Ley de Personal del Servicio Público de Puerto Rico, su Sección 5.3, *supra,* sec, 1343, integró a los municipios al Sistema de Administración de Personal, como administradores individuales. Véase, *Rivera Ortiz v. Mun. de Guaynabo*, 141 D.P.R. 257, 264 (1996).

Posteriormente, la Ley Núm. 56 de 16 de agosto de 1989, la cual enmendó la Ley Núm. 5 de 14 de octubre de 1975, *supra*, reguló el reclutamiento de empleados transitorios y prohibió la creación de puestos de duración fija para funcionarios de puestos permanentes en el servicio público. El Artículo 6 de la Ley Núm. 56 de 16 de agosto de 1989 excluyó expresamente de su aplicación a los empleados transitorios de los municipios:

*"Las disposiciones del Artículo 4 de esta ley no serán aplicables a los empleados transitorios que ocupan puestos permanentes en armonía con la Sección 7.9 del Reglamento de Personal: Áreas Esenciales al Principio de Mérito o puestos de duración fija en programas de duración determinada que se financian con fondos estatales, federales o combinados, ni a los empleados transitorios de los municipios."* [Enfasis Suplido.]

Luego, la Ley Núm. 3 de 31 de octubre de 1990, enmendó la Ley Núm. 5 de 14 de octubre de 1975 y la Ley Núm. 56 de 16 de agosto de 1989, conservando la exclusión de los empleados transitorios municipales de la aplicación de la Ley de Servicio Público de Puerto Rico.

La Ley Núm. 256 de 28 de diciembre de 1995 y la Ley Núm. 80 de 26 de julio de 1996, enmendaron nuevamente el Artículo 6 de la Ley Núm. 56 de 16 de agosto de 1989, 3 L.P.R.A. sec. 1333 nt., modificando su texto y eliminando la exclusión que se hacía de los municipios.

No obstante, la exclusión fue de forma y no de sustancia, ya que el Artículo 11.028 de la Ley de Municipios Autónomos, 21 L.P.R.A. 4577, incorporó la misma exclusión de la aplicación de la Ley de Personal del Servicio Público a los municipios:

*"§ 4577. Relación con otras leyes.*

*A partir de la vigencia de esta ley, los municipios quedarán excluidos de las disposiciones de las secs. 1301 et seq. del Título 3, conocidas como "Ley de Personal del Servicio Público", excepto en cuanto a las secs. 1381 et seq. del propio Título 3, que establecen la Junta de Apelaciones del Sistema de Administración de Personal, las cuales continuarán aplicando a los municipios. Toda acción o decisión de la Junta de Apelaciones se regirá por la situación legal vigente al ocurrir los hechos objeto de acción o decisión.*

*Asimismo, los municipios quedarán excluidos de las secs. 760 et seq. del Título 3, conocidas como Ley de Retribución Uniforme".* [Enfasis Suplido.]

Al respecto, en *Rivera Ortiz v. Mun. de Guaynabo,* 141 D.P.R. 257, 264-266 (1996), el Tribunal Supremo estableció lo siguiente:

*"Mediante la Ley Núm. 81 de 30 de agosto de 1991, conocida como Ley de Municipios Autónomos, 21 L.P.R.A. secs. 4001 et seq. (1995), los municipios quedaron fuera del sistema de personal central. Dejaron de ser Administradores Individuales y se dio paso a la creación de un sistema autónomo para la administración del personal municipal. Art. 12.001, 21 L.P.R.A. sec. 4551 (1995). El Capítulo 12 de la Ley de Municipios Autónomos comprende todo lo concerniente al funcionamiento de un sistema de personal responsivo a las particulares necesidades y estructura administrativa de los municipios. A juicio de algunos, es "la legislación de recursos humanos más importante de los últimos dieciocho años". A. N. Caballero Fuentes, El Sistema de Personal Municipal Establecido en el Capítulo XII de la Ley de Municipios Autónomos, en L. Santana Rabell y M. Negrón Portillo, La Reforma Municipal en Puerto Rico. Retos y Oportunidades, Río Piedras, Escuela de Administración Pública, U.P.R., 1993, pág. 138.*

...

*Al igual que bajo la Ley de Personal de 1975, el sistema de personal creado por la Ley de Municipios Autónomos, mantuvo la jurisdicción apelativa de J.A.S.A.P., Art. 12.002, 21 L.P.R.A. sec. 4552 (1995). La designación de este foro como "organismo apelativo del sistema de administración de personal municipal" presenta una situación excepcional, puesto que, como regla general, las instrumentalidades públicas excluidas de la Ley de Personal no tienen acceso a J.A.S.A.P.."* Véase Caballero Fuentes, *op. cit.,* a la pág. 104.

La parte demandante-apelante, Flores Rosario, plantea en su segundo señalamiento de error que erró el Tribunal de Primera Instancia al sostener la legalidad de su despido y declarar sin lugar la demanda, aun cuando tenía alegadamente un interés propietario adquirido.

En este caso, la parte demandante-apelante, Flores Rosario, tenía un puesto en el Municipio de Fajardo de carácter transitorio, el cual vencía el 28 de febrero de 1998. Así pues, a tenor con lo resulto por el Tribunal Supremo en el caso de *Dept. Recs. Naturales v. Correa, supra,* Flores Rosario tenía solamente una expectativa de retención en su empleo hasta el 28 de febrero de 1998. El Municipio de Fajardo, parte demandada-apelada, no renovó el contrato de Flores Rosario, al vencer su término. Por lo tanto, la parte demandante-apelante, Flores Rosario, cesó en su empleo transitorio al vencer su contrato y cuando ya no tenía expectativa legítima de retención en el mismo. No fue despedido.

El hecho de que Flores Rosario, parte demandante-apelante, ocupara por el término de veintinueve (29) años su puesto como obrero de brigada del Municipio de Fajardo, no le creó por sí sólo un interés propietario. Sin embargo, la parte demandante-apelante, Flores Rosario, sostiene que, a pesar de que estaba clasificado como un empleado transitorio, tenía un interés propietario adquirido por el tiempo que llevaba realizando labores en el Municipio de Fajardo. Flores Rosario entiende que debió ser considerado y tratado como un empleado permanente, acreedor a un debido proceso de ley, y como consecuencia, sostiene que no podía ser despedido sin la celebración de una vista previa. Por tratarse de un empleado transitorio a jornada parcial, sin expectativa de continuidad en el empleo, el municipio podía prescindir de sus servicios al vencerse la vigencia del contrato de empleo. No había que celebrar una vista y, por ende, no se violó el debido proceso de ley, ya que no hubo despido alguno. Simplemente, el contrato venció.

Por otro lado, el demandante-apelante, Flores Rosario, pretende que se apliquen a su caso las disposiciones de la Ley de Servicio Publico aun cuando ésta no incluye a los municipios. Tanto el Artículo 12.002 de la Ley de Municipios Autónomos, *supra,* como lo resuelto por el Tribunal Supremo en el caso de *Rivera Ortiz v. Mun. de Guaynabo, supra,* expresan claramente que los municipios fueron excluidos de la Ley de Personal del Servicio Público. Por consiguiente, la Ley de Servicio Público no es de aplicación a este caso como erróneamente alega la parte demandante-apelante, Flores Rosario.

## IV
## La Ley Núm. 100 de 30 de junio de 1959, el discrimen por razón de edad y su aplicación a los municipios

La Ley Núm. 100 de 30 de junio de 1959, según enmendada, 29 L.P.R.A. sec. 146 *et seq.*, reconoce una causa de acción para toda persona que hubiese sido despedida o de otro modo se viere negativamente afectada en su empleo por motivo de su edad, raza, color, religión, origen o condición social. *Ibáñez v. Molinos de P.R., Inc.*, 114 D.P.R. 42, 50 (1983).

El Artículo 6(2) de la Ley Núm. 100, *supra*, establece que el término "*patrono*", según se emplea en dicha ley, "*incluye a toda persona natural o jurídica que emplee obreros, trabajadores o empleados, y al jefe, funcionario, gerente, oficial, gestor, administrador, superintendente, capataz, mayordomo, agente o representante de dicha persona natural o jurídica. Incluirá aquellas agencias o instrumentalidades del Gobierno de Puerto Rico que operen como negocios o empresas privadas*". 29 L.P.R.A. sec. 151(2). Véase, *Rodríguez Cruz v. Padilla Ayala*, 125 D.P.R. 486, 507 (1990).

El Tribunal Supremo resolvió que no hay indicio alguno en el historial legislativo de la Ley Núm. 100 de que la intención de los legisladores al aprobarla fuera hacerla aplicable a los municipios. Más bien parece ser todo lo contrario. *Id.*, a la pág. 509. El término patrono según definido en la Ley Núm. 100, *supra*, se refiere a las "*instrumentalidades del Gobierno de Puerto Rico*"; los municipios no caen dentro de esa definición. Por lo tanto, los municipios no son patronos para efectos de la Ley Núm. 100, *supra*. Véase: *Rodríguez Cruz v. Padilla Ayala*, *supra*; *Fermín Orta v. Padilla Ayala*, 131 D.P.R. 227, 240 (1992).

## V

Por los fundamentos anteriormente expuestos, se confirma la sentencia apelada. Esta es conforme a derecho.

Lo acordó y ordena el Tribunal, y lo certifica la Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General